Brown, J.
—My conclusions upon the questions of fact litigated upon the trial .will appear fully from the findings. It will be unnecessary to refer to them here, farther than they may bear upon the questions discussed in this opinion.
The defendant was a special partner in the limited copartnership known as “Humphrey & Co.” The plaintiffs seek to bold him liable as a general partner for the debts of said partnership, and claim to recover upon several distinct and separate grounds. The question of the good faith of the contribution of the special partner’s capital, was substantially disposed of on the trial. It was paid in in cash, as required by the statute, and there is absolutely no evidence of any agreement connected with such contribution, that it should be used to pay the debts which the firm of Humphrey & Colgate owed to Mr. Colgate or to the *141 firm of James B. .Colgate & Go. Eighty thousand dollars of the special capital was paid to the firm of Humphrey & Colgate, and was used in connection with other money of that firm in liquidating the firm indebtedness, and in that way the debts due to Mr. Colgate and to the firm of James B. Colgate & Co. were paid. But it appears that in consideration of the sum of eighty thousand dollars thus paid, the stock of leather and hides which Humphrey & Colgate had on hand at the date of their dissolution was delivered to Humphrey and Co., and that such stock was fully worth the sum paid. Therefore, the various transactions which resulted in the payment of the debts due to Mr. Colgate and to his firm are shown to have been honest business transactions. No preconcerted agreement in reference to these details existed, and there is no evidence that would justify the inference that Mr. Colgate did not pay in his capital to the firm of Humphrey and Co., in entire good faith. The fact that the debts due to him and to Colgate & Co., by the firm of Humphrey & Colgate, were paid, is a mere incident in the transaction. Humphrey & Colgate had on hand a stock of goods worth eighty thousand dollars, and it must be assumed that the debts of that firm would have been paid if the firm of Humphrey & Co. had never been formed. The adoption* of the firm name of Humphrey and Co., was a substantial compliance with the statute.
The various questions in the case are now to be considered.
The certificate of the formation of the partnership, required by the 4th section of the statute, bears date March 9, 1874. It was signed and acknowledged by Theodore F. Humphrey, one of the general partners, on that day, and by the other general partners and by the special partner on March 11. It states “ that the amount of capital which the said James B. Colgate, *142 the said special partner, has contributed to the common stock of the said partnership is the sum of one hundred thousand dollars ($100,000) in cash.” This sum was paid by Mr. Colgate in cash to .James H. Humphrey, one of the general partners, on March 11, and by him immediately deposited in bank to the credit, of the special partnership. This payment was made before the certificate and affidavit were filed in the county clerk’s office. It does not clearly appear from the evidence whether it was made before or after the execution of the certificate by the partners who signed on that day, but as the plaintiff has the burden of showing that the statements contained in the certificate are untrue, I must assume that such payment was made before the execution on that day, and have so determined the fact to be.
The plaintiff’s claim is that the statement was false on the day of the date of the certificate, and on the day it was executed by Theodore F. Humphrey, and, therefore, all parties became liable as general partners. It would be a sufficient answer to this proposition to say, that on March 9, there was no certificate within the meaning of the statute. There was a paper signed by a single individual. One person cannot form a limited partnership, and until it received the signatures of other parties, it was impossible to make use of it for any purpose. The statute defines what a certificate is. “Those desirous of forming a partnership shall make and severally sign a certificate,” is the language of the fourth section of the act; until all who intend to become members of the partnership have signed, there is no certificate. The false statement which the statute denounces, must, therefore, be one contained in a completed instrument—one signed and acknowledged by all parties interested; one that upon its face is apparently true, and which is capable of being used to form a limited partnership, *143 and being so used, would misinform and mislead those who would deal with such partnership.
The statute permits the special partner to invest his capital in business without incurring the liability imposed upon a general partner. To that end it requires that accurate information be given in the certificate of the formation of the partnership, the names of the partners, the general nature of the business, the amount of capital contributed by the special partner, and the term for which the special partnership is to continue. The limited partnership so authorized is formed by the filing of a certificate and affidavit. Until that act is accomplished, there is no partnership, and until there is a partnership there is no need of information for any one. What precedes the act of filing the certificate is of no importance. Until that is done, no rights are conferred upon the special partner, and no wrong can be done to creditors. It is the act of filing the certificate and affidavit which gives life to the partnership, and confers immunity for the debts of the firm upon the special partner, and from that moment those who deal with the partnership become entitled to know the truth as to its formation, and from and after that time a wrong is done to those who deal with it, if a false statement is published through the filing of the certificate. The truth of the statements contained in the certificate is to be determined, therefore, at the time of its being filed with the county clerk. If true at the instant of filing, there is no liability, because, being true at the instant of the creation of the limited partnership, they fulfill the purpose for which the law was enacted. Such appears to me to b"e the spirit of the statute, and such also is its literal reading.
Section 4 provides that persons desirous of forming a limited partnership shall “severally sign a certificate;” section 5, that “the certificate required by *144 the fourth section shall be acknowledgedsection 6, that the certificate “so acknowledged and certified” shall be filed, etc.; section 7, that, at the time of filing the original certificate as before directed, an affidavit shall also be filed; section 8, “that no such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded,” nor until an affidavit shall have been filed as above directed, and “if any false statement be made in such certificate, all persons interested in such partnership shall be liable as general partners.” The words “ such certificate,” in the eighth section, clearly refer to the certificate which creates the partnership, the one which in the words of the statute has been “made, acknowledged, filed and recorded.” A paper instrument signed by one person does not come at all within the words of the statute. It may or may not become a certificate, but at that particular time it is a mere paper writing, of no force or effect whatever.
What is. required of parties desirous of availing themselves of the privileges conferred by the statute in question, is a substantial compliance with its terms. Of what importance is it whether the capital contributed by the special partner is paid in a few minutes before or a few minutes after the certificate is signed, so long as it is paid in good faith before the partnership comes into existence'í In my judgment, if, at the moment the partnership is formed by the act of filing the certificate, all its statements are true, there is both a substantial and literal compliance with the statute, and the special partner is not liable to the creditors of the firm.
The case of Durant v. Abendroth, 69 N. Y. 148, is not in conflict with this view of the law. It is true that it is said in the opinion that the certificate and affidavit speak of the day of their date, but later on *145 in the opinion it is said that the defect in the papers then under discussion would not have existed if the payment had been made in cash, Avhen the certificate and affidavit were made and filed. In that case, the certificate was dated and filed on the same day. It stated that the capital contributed by the special partner bad been paid in ; the fact was that it was not paid in until ten days after the filing of the papers. The certificate and affidavit were clearly false, and there is nothing in that ease to aid the plaintiff or in conflict with the view I have expressed:
The final proposition made by the plaintiff is that the renewal of the partnership in February, 1882, was not in accordance with the statute.
The provision relating to renewals is contained in section 11 of the act in question, and is as follows: “Every renewal or continuance of such partnership, beyond the time originally fixed for its duration, shall be certified, acknowledged and recorded, and an affidavit of a general partner be made and filed, and notice be given, in the manner herein required for its original formation; and every such partnership which shall be otherwise renewed or continued, shall be deemed a general partnership.”
The partnership of Humphrey & Co. was renewed in February, 1882, by the making and filing of a certificate and affidavit which are fully set forth in the findings.
At the date of the renewal the firm was insolvent, and the capital contributed by the special partner had been lost. The claim made by the learned counsel for the plaintiff in the language of their brief is as follows :
“ We contend it was the purpose of the Legislature to require a contribution of actual capital to the renewed or continued partnership, and the same sort of information as to its amount and character as is concededly required to form the original partnership.”
Section 11 clearly contemplates a renewal and *146 continuation of the original partnership. The capital of the special partner cannot be contributed to the renewed partnership in the manner that it was contributed to the original. That would require it to be .paid in in cash ; but being invested in the business, a payment in cash would be impossible. The statute clearly intends that the partnership shall continue with the special partner’s capital invested, as it may be on the date of the renewal, in the common stock of the firm. It would be impossible, therefore, for the affidavit filed on the renewal to state that the special partner’s capital contributed to the renewed partnership has beén paid in in the same manner as on the formation of the partnership.
The wTords used in the statute must be assumed to have been used in their ordinary meaning. The ordinary meaning of the word “manner” is “form”— the mode or way of performing or effecting anything. In the sense that the word is used in the statute, it refers to the mode or way of effecting a renewal. The word “ otherwise ” also refers to the manner of renewal; obviously it can have no other meaning. It cannot mean that the special partner shall not contribute his capital to the renewed partnership “ otherwise” or in other manner than he contributes to the original partnership, because by the fourth section it is provided that he must at the formation contribute a specific sum in actual cash payments, and, as I have already shown, such a contribution would be impossible. In construing this section, therefore, the word “manner” must be given its ordinary and usual meaning, that is, the renewal must be effected in the same “mode” or “way” that the original partnership is created. There must be a certificate and affidavit, and there must be filing, recording and publication, and if this certificate and affidavit are in proper form, and are filed and recorded, and there is a publication *147 of the notice as required by the statute, the renewal is effected for the renewed term, and the partnership is in the same condition as if its period of existence had originally been fixed for a term, which would have included the period for which it has been extended.
The fact that the penalty imposed by section 11 is against the manner of renewal solely, and not against false statements in the renewal certificate and affidavit, is strong evidence that new facts are not required to be inserted in such certificate or affidavit. In this view of the law, statements of fact in the renewal papers, if false, would have been false in the original formation, and for such false statements the parties would be liable to the penalty created by section eight.
It is claimed, however, that to permit an insolvent partnership to renew itself would be against the policy of the law, and a fraud on creditors. We cannot look - beyond the statute to ascertain its purpose or its policy. We can enforce the penalties, but can give none where none are provided in the law. The requirement as to the filing of the certificate and affidavit and publication of the notice of the formation of the partnership was doubtless intended for the benefit of those who deal with the firm; but I fail to find in the statute any provision for giving to creditors any information as to its financial condition after it is once formed and has entered upon its business; after that, it is entitled to pursue its business in the same manner and way as a general partnership, and may contract debts and engage in all the ramifications and chances of business, with nothing to interfere with .it, except the power which our law gives to creditors to enforce payment of their dues.
The time during which the partnership may continue is not limited by the statute, but is left to be determined at the will of the parties interested, and *148 when once formed the creditors are powerless to ascertain anything as to its general financial condition. It may be formed for a. long time, and the special capital may be lost in the earliest stages of its business career, and it may go on transacting business and contracting debts. If it is against the policy of the law that limited partnerships should not exist after the special capital has been lost, the principle is as applicable to a concern insolvent in the middle of its term of existence, as to the renewal of one formed for a short term. Assume two partnerships formed on the same day, the first for ten years, and the second for five ; at the end of five years both are insolvent; is there any greater evil in permitting the second to renew for five years, than in permitting the first to continue its business % Moreover, if the argument is good in a case where the special capital has been entirely lost, it is good in a case where it is but very slightly impaired. The partnership might be perfectly solvent and able to pay all its obligations, yet if the special partner’s capital was impaired in the slightest degree the firm would be compelled to terminate its existence and go into liquidation. There is nothing in the statute from which an argument of this kind can be drawn. It makes no provision for giving information to creditors after the partnership is formed.
But if it is claimed that unless there is an actual contribution of capital by the special partner, there is no limited partnership, such claim is opposed to the whole theory of the law. It is not the contribution of the capital by the special partner which creates the partnership, but the making, acknowledging, filing and recording of the certificate and affidavit. .If these papers on their face comply with the law the partnership is created. The statute does not punish a special partner for a failure to contribute his capital, but for the making of a false statement as to such contribution *149 (§ 8). So upon a renewal, if papers filed are apparently in compliance with the law, the renewal is complete. The penalty applies solely to the failure to comply with the “mannerif the papers are proper in form, but their statements false, there is no penalty.
But assume that I am in error in holding that the partnership may be renewed by filing and recording papers containing the same statements that are contained in the original papers. The renewal certificate and afiidavit in this case stated all the facts required to be stated in the original papers, and the additional facts that the capital which the special partner had contributed to the original partnership “remains in the said limited partnership wholly unimpaired; and the said amount, namely, one hundred thousand dollars, has been contributed by the said special partner to the common stock of the renewed and continued partnership.” If, therefore, the statute intends that the original partnership may be continued (and of this there seems to be no question), and as the capital contributed by the special partner must at the date of the renewal necessarily be invested in the common stock of said partnership, it seems to me that the utmost that can be claimed for the requirements of the statute is that the certificate and afiidavit must state that the special partner’s capital is unimpaired in the common stock of the partnership, and has been contributed by the special partner to the renewed partnership. There is certainly no requirement that a balance sheet of the business of the firm shall be filed or any general statement made as to its assets or debts. If this view is correct, then the renewal certificate and afiidavit are correct in form and contain all the requirements of the statute.
We have then this case: a limited partnership renewed in the manner required by the statute, but *150 the material statements contained in the certificate and affidavit are false. Under these circumstances, is the special partner liable as a general partner ? The statute must furnish an answer, and it is plain that the statute does not in terms provide for the case stated. There is no penalty provided in the statute for a false statement contained in the renewal certificate or affidavit. 'The penalty contained in section 11 is confined to a failure to comply with the “ manner ” provided for a renewal. The penalty provided in section 8 is confined in its operation to the original certificate and affidavit. There is no general provision creating a penalty for any or every violation of the statute, but to each separate requirement of the law a separate and distinct penalty is attached. It may be this is a case of omission in the statute, but it is sufficient for the court that the law is so written. The court can enforce the penalties given, but cannot give a new one. There being therefore no penalty against a false statement in the renewal certificate or affidavit, the court cannot impose one. In Bonnell v. Griswold, 80 JV. Y. 128, the court of appeals say: the court cannot “imply a term into a statute for the purpose of extending or imposing a penalty. If the legislature has not used words sufficiently explicit to include all the cases which fall within the mischief intended to be prevented, the court is not competent to enlarge them. . . . We must take the statute as it is written, and not stretch it to cover cases obviously not embraced in its terms, because they may seem to be included in its policy” (See also McCluskey v. Cromwell, 11 N. Y. 593; Benton v. Wickwire, 54 N. Y. 226).
In the case of Haddock v. Grinnell, 2 Eastern Rep. 604, the supreme court of Pennsylvania held, that the capital of the special partner must be unimpaired at the date of the renewal, and in such a condition *151 as to be available for creditors of the renewed partnership. These facts appear in the certificate and affidavit in this case. But there was not such a certificate or affidavit in the Pennsylvania case. The certificate in that case stated only that the partners covenanted to continue the said limited partnership . . . . . for the further term of two years. The
affidavit stated that the capital specified in the original certificate to have been contributed by the special partner, had been so contributed, “and remained in the common stock of the said firm.” This latter statement is very different from stating that the said capital remains in said limited partnership “wholly unimpaired,” and “has been contributed by the said partner to the common stock of the renewed or continued partnership.”
The certificate and affidavit in the Pennsylvania case were clearly not in the form required by the statute, and the decision was therefore correct. It was correct in the view of the law that I have taken; but that case does not hold that for a false statement in a renewal certificate or affidavit proper in form the special partner is liable. That case is therefore not an authority for the plaintiff beyond holding that the special capital must be unimpaired at the date of the renewal. But, as I have already shown, there is no general penalty in the act for a violation of any of its provisions, but the penalties, so far as they are applicable to this case, are those given by sections 8 and 11.
The case made for the plaintiff does not fall within any of the provisions of the statute, and the defendant must have judgment with costs.