RALPH H. WHITE AND HENRY A. BELCHER, PLAINTIFFS, v. SAMUEL EISEMAN AND MOSES L. EISEMAN, DEFENDANTS, IMPLEADED, ETC.

*Limited partnership — money paid in by special partners by a check, not cashed when the affidavit and certificate were made — liability of the special partners.*

Where an affidavit and a certificate, made under section 8 of title 1 of chapter 4 of part 2 of the Revised Statutes (1 R. S., 765), relating to limited partnerships, states that $10,000 contributed by two special partners, named therein, to the common stock, has been actually and in good faith paid in cash, and it appears that, in fact, no cash payment had been made by the special partners at the time the affidavit was verified, but a check for $10,000 had been drawn on that day by such special partners, which was certified on the following day, and was deposited to the credit of the partnership on the next day thereafter, on the afternoon of which latter day the certificate and affidavit were filed and recorded in the proper county clerk's office, and that the next day the check was paid in due course of business to the bank in which it had been deposited.

*Held,* that the special partners were liable for the debts of the partnership. (BARRETT, J., dissenting.) .     .     .     .     .     .     .

That the truth of the affidavit was to be determined at the date at which it was sworn to, and not as of the date at which it was filed in the county clerk's office, and that the affidavit was, therefore, false.

Exceptions ordered to be heard at the General Term in the first instance, after a trial at the New York Circuit on October 15, 1889, at which a verdict was directed in favor of the plaintiffs for $1,463.

The action was brought to recover from the defendants, who were special partners in the firm of Spencer & Perkins, a demand existing in favor of the plaintiffs against that firm, on the ground that the defendants were liable as general partners.

The complaint alleged, among other things, "that the amount of capital stated in the said certificate and affidavit to have been paid in cash by the defendants, Samuel Eiseman and Moses L. Eiseman, had not, either at the time of the execution or filing of the said certificate and affidavit, been paid in cash, and that such certificate and affidavit are false."

*Charles Austin McMahon*, for the plaintiffs.

*A. Blumenstiel*, for the defendants.

Bartlett, J. :

Section 7 of the title of the Revised Statutes relating to limited partnerships (1 R. S., 765), requires that at the time of filing the original certificate an affidavit of one or more of the general partners shall also be filed in the office of the county clerk, stating that the sums specified in the certificate to have been contributed by each of the special partners to the common stock have been actually and in good faith paid in cash.

The next section (§ 8) is in the following words: "No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed as above directed; and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership, shall be liable for all the engagements thereof, as general partners."

The question in the present case is whether the defendants Eiseman are liable as general partners in the firm of Spencer & Perkins by reason of the fact that a false statement was made in the statutory affidavit. The affidavit was made by Sidney S. Spencer, one of the general partners in the firm, and was sworn to in the county of Rensselaer on the 3d of August, 1886. The certificate,

which appears to have been executed and acknowledged by all the partners on the same day, specified $10,000 as the sum contributed by the special partners, Samuel Eiseman and Moses L. Eiseman, to the common stock. The affidavit stated "that the sum specified in said certificate to have been contributed by the special partners to the common stock has been actually and in good faith paid in cash." As a matter of fact, however, no cash payment of the contribution of the special partners had actually been made at the time this affidavit was verified, nor was any cash payment thereof actually made at any time on the 3d day of August, 1886. A check for $10,000 on the Pacific Bank, payable to the order of Spencer & Perkins, was drawn by the defendants in the city of New York on August 3, 1886, and delivered to Sidney S. Spencer, the general partner who made the affidavit. The check was uncertified, but was certified on the following day, the fourth, and was deposited to the credit of the partnership a day later, on the fifth, in the city of Troy, at two o'clock in the afternoon. The certificate and affidavit were filed and recorded in the office of the county clerk of Rensselaer county on the same afternoon at a quarter to five o'clock. The check was paid in the due course of business on the 6th of August, 1886, to the Troy Bank in which it had been deposited.

Upon these facts the plaintiffs insist that the defendants Eiseman are liable as general partners, because, at the time the affidavit of the general partner was made it was not true, as therein stated, that the contribution of the special partners had been paid in cash; while the defendants contend that, inasmuch as the check had been certified and deposited in the bank account of the firm before the certificate and affidavit were filed, the statement contained in the affidavit must be regarded as true, because the affidavit is to be deemed to speak, not from the time when it was verified, but from the time when it was placed on file in the office of the county clerk.

The defendants, in support of their position, cite the various decisions holding that a substantial compliance with the terms of the statute concerning limited partnerships is all that will be insisted upon by the courts; that mere defects of form may be overlooked and disregarded; and that the provisions of the act should not be too strictly construed. There is no occasion to question the correctness of any of these propositions in the slightest degree in the case

before us. Here, if there has been any failure to comply with the requirements of the statute at all, it is a failure in a matter of substance. The truthfulness of the statutory affidavit·is made, by the very terms of the law itself, essential to the valid constitution of a limited partnership, so that the only test which it is necessary to apply is a reference to the facts to ascertain whether they accord with the statement in the affidavit. In the present case it is plain that they do not, if the affidavit is to be construed as speaking with reference to the existing state of things at the time when the general partner swore to it. On that day there had been no act by or in behalf of the special partners which amounted to a completed cash payment of their contribution to the capital on any theory. The defendants cite *Durant* v. *Abendroth* (69 N. Y., 148) and the *Metropolitan Bank* v. *Sirrett* (97 id., 325) as authorities to the effect that the giving of a certified check is equivalent to a payment in cash; but whether that be so or not, no one pretends that the giving of an uncertified check by the special partners to the general partners constitutes the cash payment which the statute prescribes. The question upon which the case at bar, therefore, turns is simply this: Is the truth of the statement contained in the affidavit to be determined as of the time when the affidavit was filed with the county clerk, or with reference to the time when the affidavit was actually verified by the general partner who made it?

So far as the certificate is concerned, it has been held to be sufficient that it shall be true at the time of filing and recording it. (*Ropes* v. *Colgate*, 17 Abb. N. C., 136.) It may well be that this unverified instrument can properly be signed before the events of which it is intended to be evidence have actually come to pass, so long as the signers are actuated by the intent that it shall not be used in any manner until the statements which it contains actually accord with the facts. Under such circumstances, until the certificate is placed in the hands of the county clerk to be filed and recorded, it is like a deed in escrow. But I do not see how any such view can possibly be taken of the affidavit. An affidavit must be true when it is made or it can never be true at all. The subsequent occurrence of the events therein stated to have happened cannot make the statement true that they had already happened at the time the affiant swore to it. In other words, affidavits cannot be made

in escrow, because the affiant hopes or believes that what he swears to will afterwards come true. To tolerate or sanction the doctrine that an affidavit speaks only from the time when it is used, instead of from the time when it is made, would be to encourage careless swearing and perjury.

I see no room for doubt in this case that the statement contained in the affidavit of the general partner was false, and, therefore, rendered the special partners liable for the engagements of the firm. It is my opinion, therefore, that the exceptions in behalf of the defendants Eiseman should be overruled, and that the plaintiffs should have judgment upon the verdict.

VAN BRUNT, P. J.:

I concur in the conclusion reached by Mr. Justice BARTLETT in this case. The statute in respect to the formation of limited partnerships exempts the special partner from the ordinary personal liability of a partner if certain requirements of the statute are complied with, one of which is the making and filing of an affidavit that the special capital has been actually paid in cash; now, as I understand it, an affidavit false when made always remains false, and the subsequent happening of the event sworn to does not make it true.

An affidavit cannot be made and delivered to be held in escrow, to become an affidavit if the events sworn to as having taken place, but which have not, in fact, happened, do at some future time occur, otherwise to be null and void. The requirements of the statute are simple enough and easily followed. If the special partner thinks they are otherwise, he need not embark in the adventure. The hardships referred to by Mr. Justice BARRETT seem to me to be more imaginary than real; and if following the plain requirements of the statute is deemed impossible, nobody is bound to incur any risk, as no one is required to seek the shelter of the statute.

BARRETT, J. (dissenting):

I am unable to concur with my brother BARTLETT in this case. It seems to me that the strict letter of the statute should not be applied against a special partner where every essential has been complied with. Here the special partner's certified check for the amount of his contribution to the capital was actually on deposit in

the firm's bank at the time when the certificate and affidavit were filed. Every statement contained in these papers was true at the moment of such filing. If this affidavit, just as it stood, *verbatim et literatim,* had been reverified a moment before the filing, it is not pretended that the special partner would have been liable. A special partner cannot make this affidavit. That must be done by one or more of the general partners. If the affidavit is false, the special partner is nevertheless liable. Thus the burden is put upon him to see to it that a truthful affidavit is filed. If here the special partner had read the affidavit at the moment of filing, he would have seen that the exact truth was stated therein. Yet he is sought to be held because he did not happen to observe the precise date of the *jurat.* Upon this construction of the statute, even lynx-eyed observation of the date of the *jurat* would not always avail the special partner. For, as a matter of fact, the affidavit might have been sworn to upon the very day when the cash was actually paid in, *but yet a few hours before such payment.* Such a claim, if allowed, would sacrifice substance to form, and if pursued with regard to the statute generally, would ruin innocent people upon pure technicalities. In my judgment, the false statement contemplated by the statute, whether made in the certificate or in the affidavit, is a statement which, when it meets the eye of the public, is in any particular misleading. " The object of the statute," said Folger, J., in *Van Ingen* v. *Whitman* (62 N. Y., 520), " is, by the payment into the capital of a specified sum in cash, to give reasonable security to the portion of the public likely to deal with the partnership; and *to insure the payment of that sum, thus,* it requires the affidavit that the payment thereof has been thus made before the partnership can start as a limited one. The statement of the amount of the cash payment is required *so that the public may guage thereby the extent of its dealings with the firm. The affidavit is called for that the public may have reliance upon the existence of the fact of payment.*"

That the statute should receive a reasonable construction was held by the Court of Appeals in *President, etc.,* v. *Laimbeer* (108 N. Y., 582). In that case Peckham, J., speaking of the plaintiff's contention that the statute must be strictly construed and all its provisions fully

and even technically complied with before exemption from general liability can be claimed, observed :

"Acts providing for the formation of a limited partnership should receive a reasonable construction, not such as to make its formation almost impossible, and not such that where the slightest and most innocent (*and to third persons an entirely harmless*) deviation from the strictest construction that can be given to a statute shall work results to the special partner of possibly a most disastrous and utterly ruinous nature, including liability for enormous debts incurred by the general partners where the credit given was not in the least based upon any assumed liability of the special partner greater than the capital he had contributed."

In *Durant* v. *Abendroth* (69 N. Y., 148) the certificate and affidavit were actually filed on the 23d of December, 1870, and the partnership did not commence until the first of the following January, nor was the capital actually paid in until the second of January. Both the certificate and affidavit, therefore, were untrue at the time when they were filed, but even with reference to that state of facts, PECKHAM, J., in the *Laimbeer Case* (*supra*), said : ·

" I think it was a very stern and technical application of the statute, because, confessedly, before one particle of business was transacted by the firm, and *on the earliest possible day after* the com · mencement of the term of partnership at which it could be done, *the check was paid and the cash contributed* by the special partner to the general fund. *It does not seem to me as if the principle of that case should be extended.*"

The *Laimbeer Case* seems to be a distinct authority against a technical construction of the statute, especially in non-essentials, and in favor of the sufficiency of a substantial compliance with its terms.

I see no distinction in principle between the present case and *Ropes* v. *Colgate* (17 Abb. N. C., 136). In that case Justice BROWN said that, " What is required of parties desirous of availing themselves of the privileges conferred by the statute in question, is a substantial compliance with its terms. Of what importance is it whether the capital contributed by the special partner is paid in a few minutes before or a few minutes after the certificate is signed, so long as it is paid in good faith before the partnership comes into existence ? In my judgment, if, at the moment the partnership is

formed by the act of filing the certificate, all its statements are true, there is both a substantial and a literal compliance with the statute, and the special partner is not liable to the creditors of the firm."

The statute in this respect makes no distinction between the certificate and the affidavit. If either is false, the specified consequences follow. In one case there is a false statement, in the other a false oath. If either tends to thwart the statute, mislead the public or induce any one to rely upon a fact which does not exist at the moment of filing of the papers, the liability of general partner follows. It is not until that moment that the partnership becomes complete, and it is not until that moment *that the affidavit becomes material.* It is not a question of the criminal law, nor yet of moral obliquity. It is simply a question of a statement placed on file for the inspection and advice of persons about to deal with the firm. What difference can it possibly make to such persons whether the truthful facts placed before them on the files were sworn to on the day of filing or the day before; on the day when the check was cashed or the day before? Where, then, the special capital has been paid in, in cash, prior to the filing of the certificate and affidavit, and these documents so state, everything essential or substantial has been done. To hold a special partner liable under these circumstances is simply to fine him the debts of the firm, not because of his own perjury, but because of an anticipatory statement made by another person, technically inaccurate at the time it was verified, but true when used pursuant to the requirements of the law, and which could not possibly have affected any person who ever had dealings with the firm.

I think the exceptions should be sustained and a new trial ordered.

Exceptions overruled as to defendants Eiseman, and judgment ordered for plaintiffs upon the verdict.