## MELINDA ANDERSON
## v.
## WILLIAM E. STONE.

*Limited Partnership—Formation of—Cash Payment by Special Partner, Coupled with Agreement for its Application—Validity of—Sufficiency of Affidavit.*

1. Upon the formation of a limited partnership to carry on a business already established, the limited partner may pay in money, coupled with a previous or simultaneous agreement that it shall be applied in payment of indebtedness· for goods already in stock. Such an agreement is neither against public policy nor contrary to the provisions of the statute of this State.

2. In the case presented, this court holds that the affidavit by the general partner, attached to the certificate of partnership, wherein it is stated that the sum paid in by the special partner was actually paid in cash, was true in letter and spirit, although such payment was coupled with an agreement for its application. Such agreement does not render the special partner generally liable for the partnership debts.

[Opinion filed December 9, 1887.]

APPEAL from the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

Prior to December 20, 1883, G. W. H. Gilbert was a merchant, dealing in Peoria, Illinois, in hats, caps, " buck goods," furs and fur goods, having a stock of goods the cash value of which was $10,450.04, incumbered by indebtedness to the amount of $4,950.04 for the purchase price of the goods, leaving the value of the stock after paying the indebtedness

Anderson v. Stone.

$5,500; and desiring to take a partner into the business he entered into a limited partnership with the appellant, as was supposed at the time in compliance with Chap. 84, entitled " Limited Partnership," Starr & C. Ill. Stat., p. 1564.

The certificate of limited partnership and affidavit annexed was, in substance, that they certified they had entered into a limited partnership under the name of G. W. H. Gilbert & Company ; that the business of such partnership is dealing in hats, caps, " buck goods," furs and fur goods in the said County of Peoria ; that said Gilbert is the general partner and appellant the special partner ; that the appellant as such partner contributes the sum of $2,750 to the common stock of the said partnership ; that said partnership shall commence from and after the date of the instrument, December 20, 1883, and terminate on the 1st day of December, 1888, or upon mutual consent and notice.  This certificate was duly signed by said Gilbert and appellant and duly acknowledged before Enoch P. Sloan by each of the parties on the same day, and said Gilbert duly made oath to said certificate before said Sloan on the same day, and stated that appellant, the special partner in the firm, " has actually and in good faith paid into the common fund of the said partnership the sum of twenty-seven hundred and fifty dollars ($2,750) in cash." The legal notices and certificate of the printers were duly given and filed as the statute required. The new firm went into business under the articles of partnership at once, and continued in business till July, 1885, when, becoming embarrassed, the assets of the firm went into the hands of an assignee appointed by the County Court. The estate of the firm having been fully settled and only paying a portion of the indebtedness, this suit was brought by appellee on two promissory notes signed by the firm of G. W. H. Gilbert & Co., payable to appellee, the one dated February 2, 1885, for $1,000, payable in ninety days, and the other dated February 18, 1885, for $500, payable in sixty days. The cause was tried by the court without a jury and judgment rendered by it against the defendants, G. W. H. Gilbert and appellant, for the sum of $729.20, being the balance due on the notes. The pleas were general

Anderson v. Stone.

issue, and an agreement that all defenses might be given in under the general issue. The defense was made that under the articles of agreement and the provisions of the statute the appellant was not generally liable to pay the said claims. That she had never taken anything out of the firm and was only liable for the amount she had put into it. But the court disregarded the defense and rendered a general judgment against her for the above sum. From this judgment this appeal is taken.

The appellee put in evidence the agreement of partnership as follows:

"Dated December 20, 1883.

"The partnership, to commence on this date and continue until December 1, 1888. First party, Gilbert, puts into the partnership his stock of goods, book accounts, bills receivable, store fixtures, apparatus, etc., as set forth in 'Schedule A' hereto attached and made a part hereof, valued at $5,500, after deducting bills payable assumed by said firm. Second party pays in $2,750 in cash.

"It is agreed, that said firm shall assume the business debts of said party of the first part, which are mentioned in the schedule hereto attached and marked 'Schedule B,' which is hereby made a part of this agreement, and said money paid into said partnership shall be used in paying said indebtedness, so far as it will do so.

"The first party shall receive two-thirds and second party one-third of profits, and losses be borne in the same way, except liability of second party limited to $2,750. That there be yearly settlements, commencing February 1, 1885. That first party may draw $1,200 per annum, but not to exceed $100 in any one month. Second party may draw $600 per annum, but not exceed $50 in any one month; and profits in excess of $1,800 per annum shall remain in the firm and be divided on final settlement.

"First party shall have the general supervision of the business, purchase of all goods, signing of all checks, and special management of fur department.

"Second party may, at her own expense, place in said store

a person, whom she shall select, who shall have special charge of the hat, cap, glove and furnishings department, and general supervision of the books and accounts of said firm, and of the entire business in the absence of said party of the first part."

Messrs. GEORGE B. FOSTER and D. F. RAUM, for appellant.

Messrs. STEVENS, LEE & HORTON, for appellee.

The statute requires that at the time of filing the original certificate of partnership, an affidavit of the general partner shall also be filed, stating that the amount specified in the certificate to have been contributed by the special partner has been actually and in good faith contributed and applied to the same. Starr & C. Stat., Sec. 7, p. 1565.

And if any false statement is made in the certificate of partnership, or the affidavit of the general partner, all the persons interested in such partnership shall be liable for all the engagements thereof as general partners. Ib. 8, p. 1566.

The courts allow no disregard of the provisions of these statutes that may prejudice the rights of creditors. Durant v. Abendroth, 69 N. Y. 148; Van Ingen v. Whitman, 62 N. Y. 513; Argall v. Smith, 3 Den. 435; Haggarty v. Foster, 103 Mass. 17; Pierce v. Bryant, 5 Allen, 91; Coffin's Appeal, 106 Pa. St. 280.

Where the affidavit of the general partner shows a contribution of money by the special partner, the contribution of any other commodity does not satisfy the statute. Havillard v. Chase, 39 Barb. 284.

Knowledge on the part of appellee that appellant claimed to be a special partner, does not affect him, if the requirements of the statute were not complied with. Andrews v. Schott, 10 Pa. St. 47, 55.

LACEY, J. The main point of objection raised to the validity of the partnership of the appellant and G. W. H. Gilbert is, that it appears that the $2,750, paid in by appellant, was not

paid in cash, but was actually paid in liquidation of Gilbert's debts, due by him on account of the goods then in his stock which was by him then put into the new firm, and that being the case, the affidavit of G. W. H. Gilbert, attached to the certificate of partnership filed in the County Clerk's office, was false, and thereby each member became "liable for all the engagements thereof as general partners," as provided by the statute.

The first inquiry will be, was the money, $2,750, paid in by appellant in cash, or was it goods she put into the firm, or was it inadequate for any reason?

It is claimed under the authority of Met. Nat. Bank v. Serrett, 97 N. Y. 320, that a payment coupled with an antecedent agreement obliging the partnership to a specified use of the money, is not a payment in cash. Other cases are cited by appellant. In the case of Andrews v. Schott, 10 Pa. St. 47, one Harris put $10,000 into the firm as a special partner and subsequently another partner was taken into the firm and a new certificate of special partnership issued, showing that Harris had contributed $15,000 to the common stock of the firm. The first amount, $10,000, contributed by Harris, was in cash, and remained there untouched by Harris, as a part of the capital, at the time the partnership was renewed or changed. Harris claimed that sum ($10,000) should be considered good payment to the new firm, but the court held all the assets of the first firm are pledged to the debts of that firm, and the entire assets may not be sufficient to pay its debts; that, inasmuch as the first payment was liable to pay the debts of that firm, nothing was paid to the second firm.

In the case of Pierce v. Bryant, 5 Allen, 91, it was held, payment in promissory notes was payment in cash. The court held that this would not be a substantial compliance with the provision of the statute. In Havillard v. Chase, 39 Barb. 284, it was held that a payment in goods is not equivalent to payment in cash. The court say that "to allow it would be to sanction and encourage fraud." The same was held in Van Ingen v. Whitman, 62 N. Y. 531. In the case of the Met. Nat. Bank v. Serrett, *supra*, where the remark was made that

Anderson v. Stone.

"a payment coupled with an antecedent agreement obliging the partnership to a specified use of the money is not a payment in cash," it was made with reference to the facts in that case and was *dictum*, the point not being necessarily involved, in the question decided. The facts were that the party who became the special partner was the owner of the stocks of goods, and wanting to close up on account of age and let the business go into other hands, entered into partnership with other parties, becoming a special partner by paying $40,000 into the new firm and then immediately selling to the new firm his stock of goods for $40,000, which was paid over to him and the new firm had the goods and he had the $40,000. Though the transaction was very suspicious, the court upheld it on the facts as a genuine transaction, holding there was not sufficient proof to show that the sale of the goods was pre-arranged prior to the money being paid into the new firm by the special partner.

It will be borne in mind in considering those decisions that the statutes of New York, Pennsylvania and Massachusetts allow the proposed special partner to put nothing into the firm for his interest except *cash*. Hence any circumvention by which a party desiring to become a special partner accomplishes it by paying in his interest, in the proposed firm, in anything save cash, is a fraud on the statute and contrary to the general policy of the law. Such a transaction could not be allowed to stand. And the court, even in the latter case, says: "There is nothing in the letter or policy of the Limited Partnership Act to prevent the change from a general partnership into a limited one. The practical convenience of such a proceeding in many cases, is manifest." What, in substance, was done in the case at bar? G. W. H. Gilbert owned a stock of goods of the value of $10,450, with which he wants to continue business, or with $8,250 of it. If he had as much as $2,750 of cash put into his firm he could pay enough of the old firm's debts which the goods were pledged to pay, to enable him to pay up the remaining indebtedness and go on with the business. The $2,750 would, by taking in a special partner, go to pay up old debts, and the special partner could not

withdraw this capital. The remaining goods, after deducting the $8,250, would be $2,200, just equal to the remaining debts. The new firm could pay those debts out of the goods, and therefore took them and assumed the debts—a far more praiseworthy and honest transaction than to have bought the goods of Gilbert, leaving the old creditors with nothing but Gilbert's individual responsibility for their security. Why did the Court of Appeals of New York intimate that an undertaking made in advance to use the money put in by the proposed special partner to pay for goods owned by such proposed partner was equivalent to an agreement to put in the goods without such contract? It is obvious—it was doing indirectly what could not be done directly. It was a fraud on the law, actual and intended.

We can not think that an agreement in advance to use the cash so put in to buy goods in the general market or of any particular firm for the use of the new firm in its business, or even to pay off debts and incumbrances on the stock of goods already in the firm, would vitiate the transaction on the ground that actual cash was not put into the proposed firm by the proposed special partner. Suppose a chattel mortgage due to a third party had been executed by Gilbert on the goods in question for $2,750 and the agreement had been that the money proposed to be put into the special partnership should be used to pay off such mortgage, could such transaction be construed into one and the same as though appellee had actually put in goods directly? It seems to us that it could not. The title to the goods was never in appellant until she became possessed of her interest as a partner in the firm assets, the entire amount of which was $8,250. She did not put this interest into the firm. She acquired it by the money she put in, which was afterward used to pay off incumbrances on the goods. If she did not put in goods she paid in money, although coupled with a previous or simultaneous agreement that it should be applied in a specified direction. Unless such stipulation rendered the transaction void, as being against public policy and contrary to the provisions of the statute, Gilbert's affidavit was literally and substantially true.

We will next consider what effect such cotemporaneous agreement could have on the transaction. Is there anything in the statute or policy of the law to prohibit the general and special partners, in their articles of co-partnership, from pro. viding for the application of the cash to be paid in by the special partner in such a manner as to forward and be consistent with the best interest and lawful purposes of the proposed firm, as well as the rights of future creditors? By the statute of New York and the other States mentioned, nothing but cash was allowed to be put into the proposed firm by the special partner; goods were excluded; yet the court in Met. Nat. Bank v. Serrett, *supra*, said: "There is nothing in the letter and spirit of the Limited Partnership Act to prevent the change of a general partnership into a limited one." If that be so as to that State, much more should it be so in this State where the statute expressly authorizes the putting in of goods in lieu of cash by the special partner. Gilbert in this case did not propose to become a special partner, but to remain generally liable for the new as well as the old debts, and there was nothing in the policy of the law to prohibit it. It would be a more favorable arrangement for the future creditors of the new firm as well as the creditors of the old. Gilbert found himself in possession of a large stock of goods incumbered by a considerable debt which he equitably should and did recognize and, an opportunity offering, entered into the contract of co-partnership in question.

The limited partnership then formed received the full value in goods for all assumed liability.

The future creditors commenced dealing with the limited partnership on most favorable terms, as it had only about $2,200 debts, and to offset this indebtedness it had the same amount of goods, and a capital over of $8,250. We can see no objection to such a plan of procedure being adopted in its incipiency by the members of the new firm to be carried out when the firm is organized. The articles of agreement provided for assuming the old debts by the limited partnership. For doing this it received goods in compensation. This part of the agreement is not complained of. The old debts of Gil-

bert by the agreement became the debts of the new firm and they must be paid. It is not claimed that the new firm could not have lawfully applied the money put in by the special partner, if there had been no pre-existing agreement to that effect, to the payment of the old debts so assumed by the firm. Even with the agreement, as made, the partners might have changed the application of the money paid in by appellee to other purposes after the partnership was formed. It were better for future creditors to have the old debts paid at once and the new firm free from debt. No harm could come to the general public from the course pursued. Debts are always dangerous to a greater or less degree, to any business, and the future creditors would be benefited in having them paid.

It does not follow in every case where the money of the proposed special partner is paid in with an agreement for its application by the terms of the articles of partnership that the payment will be deemed illegal. It will only be so in cases where some policy of the statute or law is contravened, or where the statute is attempted to be evaded, by fraud and circumlocution. But a previous agreement to appropriate the money to be paid in, not violating any of the above principles, will not be regarded in such a light as to vitiate the payment of the money into the special partnership by the special partner as a payment of cash under the provisions of the statute, nor will such agreement to appropriate such money for the legitimate purposes of the firm, have the effect to render the affidavit of the general partner, swearing to cash payment, false, within the meaning of the statute, with the consequence of making the special partner generally liable for all the debts. It will be seen by the terms of the articles of agreement of the special partnership, that the application of the money to be paid in was not a condition precedent to its actual payment into the treasury, nor did it render the articles of partnership void in case the money was not applied according to such agreement.

The money was actually paid in for the purposes of the business of the new firm, was so used, and, as we have shown,

Anderson v. Stone.

the agreement as to its application was not in any way harmful or against the spirit or letter of the statute.

In the general formation of partnerships it is of common occurrence in the articles of partnership to provide for the purchase of the assets of the firm, create debts and provide for their payment after such partnership is formed, and limit and control them, and determine out of what fund they shall be paid. The articles of partnership in the case at bar provide for the acquiring the assets and the creation of the debt in consequence, and determine in what manner a portion of such obligation should be paid, to wit, out of the fund contributed by the special partner. We are unable to determine what principle of law or portion of the statute on "Limited Partnership" is violated by such an arrangement. And no act is done that would be detrimental to the interest of the public or future creditors. The ordinary business man would understand, as the statute does not forbid, that associations could be formed in this way.

We therefore find that the affidavit attached to the certificate of partnership, in which it is stated that appellant had actually paid in cash the amount of $2,750 into the fund of the partnership, was true in letter and spirit.

If the statute is to be upheld it must have a fair and reasonable construction by the courts, otherwise it would be substantially nullified by a course of narrow, illiberal and technical rulings. The Limited Partnership Act is a beneficial law; it encourages trade, and enables the active business man of small means to obtain capital with which to engage in business, from those who are willing to risk a limited sum, but unwilling to incur general liability.

No fraud was intended by either appellant or Gilbert, either to evade the law or to defraud future creditors of the proposed firm.

The appellee contracted the obligations sued on with full knowledge of the fact that appellant was only a limited partner, and did not expect at the time to hold appellant personally liable for his debt. It would be doing her great injustice to hold her liable as a general partner. The point is made by

appellee that the proof fails to show that the $2,750 was actually paid in by appellant prior to the time of filing the certificate of partnership, and the making the affidavit by Gilbert. We have examined the evidence, and deem it sufficient on that point.

The judgment of the court below is therefore reversed and the cause remanded.

*Reversed and remanded.*