METROPOLITAN NAT. BANK v. PALMER *et al.*

(*Supreme Court, General Term, First Department.*   March 14, 1890.)

1. LIMITED PARTNERSHIP—CONTRIBUTIONS BY SPECIAL PARTNERS—CERTIFIED CHECKS.
Contribution of capital by a special partner by means of a certified check on a solvent bank is an "actual cash payment," within 4 Rev. St. N. Y. (8th Ed.) p. 2492, § 2, requiring special partners to contribute their share of the capital "in actual cash payments."

2. SAME—RELEASE OF SPECIAL PARTNER—PROVINCE OF JURY.
Where there are substantial grounds for a contention that a special partner was to be released from his contribution by means of a check for the amount thereof, drawn in his favor by one of the partners on the day that the special capital was contributed, if the existence of any such understanding is to be derived by way of inference from the conduct of the parties, it is a question for the jury to decide.

3. SAME—LOSS OF PRIVILEGES.
A mere expectation that the capital of the partnership would be employed to purchase the stock of an immediately preceding firm does not deprive the former of its character as a limited partnership, for, in the absence of an actual agreement to that effect when the capital was contributed, the partnership would be at liberty to use its capital, when it was received, in that or any other direction.

4. SAME—CHANGE OF BUSINESS.
The special partner is not rendered personally liable for the debts of the partnership merely because loans were made to the preceding firm, and by the latter to the partnership for mutual accommodation, on the ground that these transactions constitute a change in the business.

Appeal from circuit court.

Action by the Metropolitan National Bank against John Paret and Mary E. Palmer, Ursula Story and Alice Rowland, executrices of Rufus Story, and others, impleaded. There was verdict for defendants, and an order denying a motion for a new trial, and plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Alexander & Green,* (*Joseph H. Choate* and *William G. Gulliver,* of counsel,) for appellant. *John E. Parsons,* for respondents.

DANIELS, J. The action was brought to recover the amount unpaid on 16 promissory notes made by the firm of John Paret & Co. in the latter part of the summer and during the fall of the year 1883, four of which were rejected at the trial as the notes of another firm. As the action was originally commenced, it was against all the members of this firm, which failed in business near the close of the year 1883. The firm had then become insolvent, and its property was attached, and an assignment made of the residue for the benefit of its creditors. But while all the defendants in the action as it was commenced were members of the firm, the defendant Rufus Story resisted his liability on the ground that he became no more than a special partner in the firm, and was not liable personally upon the notes. He died during the pendency of the action, and his executrices were made defendants in his place by a revival of so much of the action against them. A supplemental complaint was served after the order for the revival of the action, to which they served an answer reasserting the same defense which had been presented by the testator; and whether he became a special partner in the firm in good faith, and by a compliance with the provisions of the statute relating to partnerships of this description, was the question upon which the action was tried and disposed of. The partnership was formed on the 3d of January, 1882; and by the agreement, and the other instruments and papers executed at that time, and

afterwards filed, and the publication made under the designation of the county clerk, it appears that the partnership was, in form at least, organized and created as the statute had provided that it might be. No such defect has been found in either of the instruments required to be made for this object, or in the publication of the notice given of the formation of the partnership, as rendered this partner liable for the debts of the firm.

It was provided by the articles of partnership that the capital of the firm should amount to the sum of $150,000,—$60,000 of which was to be contributed by the special partner; $75,000 by John Paret, one of the general partners; and $15,000 by the other three general partners. And, as the facts were proved by the evidence, the special partner, Rufus Story, did contribute by his certified check the sum of $60,000, and the general partners contributed in like manner the sum of $15,000; the residue of the capital to be contributed by the partner John Paret being payable afterwards, from time to time, as it might be realized from his assets in a previous firm existing and carrying on business under the same name. It was objected at the trial, and on that ground an application was made for the direction of a verdict in the plaintiff's favor, that the certified check contributed by Rufus Story for his $60,000 capital in the firm was not a compliance with what the statute has declared to be necessary for the creation of a special or limited partnership. But there was no error in overruling this objection, and denying the application, so far as it was dependent upon it, for the reason that it has already been determined that the contribution of capital may be made by the special partner through the intervention of a valid certified check. *Bank* v. *Sirret,* 97 N. Y. 320, 325; *Lawrence* v. *Merrifield,* 42 N. Y. Super. Ct. 36, affirmed 73 N. Y. 590; *Hogg* v. *Orgill,* 34 Pa. St. 344; *Bank* v. *Loyd,* 25 Hun, 101. What the statute [1] has required is that the capital to be contributed by the special partner shall be paid in cash; and by the certified check of a solvent bank the capital is as completely subjected to the control and disposition of the firm as though the money were drawn upon it, and it was in form paid over in cash. This check was so drawn and certified; for it appears, by the stipulation which was made a part of the evidence upon the trial, that Story kept his bank-account in the Broadway National Bank of the city of New York, and had at the time on deposit to his credit a larger amount than this sum of $60,000, and that credit was not impaired until the actual payment of the check, which was made by the bank on the next day. This check was delivered to the other members of the firm, more especially to John Paret, who seems to have been the controlling member, on the day when the partnership agreement was made; and evidence was given tending to prove that it had been actually deposited in another bank to the credit of this firm about the hour of 12 o'clock on the 3d day of January, 1882.

The right of the testator to be exonerated from liability by the delivery and deposit of this check to the firm was further resisted, on the ground that it was not given in good faith, and not intended to be retained as a part of the capital of the firm; and, if that fact had been established by the evidence to the satisfaction of the jury, then undoubtedly the plaintiff in the action was entitled to recover; for both the statute, and the authorities following it, explicitly require that the capital of the special partner shall be in good faith contributed to the firm, and whether it was so contributed or not was submitted by the court as a matter of fact to the jury. The evidence proved the

---

[1] 4 Rev. St. N. Y. (8th Ed.) p. 2492, § 2, relating to limited partnership, provides that "such partnerships may consist of one or more persons, who shall be called general partners, and who shall be jointly and severally responsible as general partners now are by law; and of one or more persons who shall contribute, in actual cash payments, a specific sum as capital, to the common stock, who shall be called 'special partners,' and who shall not be liable for the debts of the partnership beyond the fund so contributed by him or them to the capital."

fact to be that other firms had preceded this firm in which John Paret had been the controlling partner, and the firm immediately preceding this firm was formed by himself and another person as the sole partners.    Previous to that time the firms with which he was identified as a partner were special or limited partnerships; and, as they were changed from time to time, the property and stock of the preceding firm was purchased and acquired by its successor. And, after the firm in controversy was formed, a like purchase of the stock and fixtures of the immediately preceding firm was made by it; and in that purchase at least the sum of $110,000 contributed to the firm now in suit was paid by it to its immediate predecessor.    A large residue of the purchase price, which amounted in all to the sum of $240,000 or upwards, was left unpaid, but made payable from time to time by the firm now in suit.    This immediately preceding firm was then at least in precarious circumstances, if not positively insolvent.    But it is stated in the testimony of the witness Paret, read upon the trial, not to have been so considered by him, for the reason that with its other assets, consisting of cash and bills receivable and accounts due from customers, a large amount was outstanding, exceeding its liability by the sum of $111,561.53.    But, as these demands to a large extent finally proved to be uncollectible, this balance substantially failed to be realized.

At the time when this certified check was contributed by Story to the capital of the firm, John Paret, who was his son-in-law, was indebted to him in the sum of $75,000 for money which had been loaned; and this immediately preceding firm was also in like manner indebted to the extent of $30,000.    And these moneys are stated to have gone into the business of that firm.    After the contribution to the capital of this final firm was made in the manner already stated, and the purchase had been made by it of the stock of its immediate predecessor, the check given for that purpose was deposited to the credit of the preceding firm in the Metropolitan Bank; and a check was drawn upon that bank in favor of the partner John Paret for the sum of $90,000, which is stated to have been given to repay to this partner the sum of $50,000 on his capital account, and to the extent of the balance of $40,000 to have been a loan to him.    Upon the deposit of this check a further check was drawn by himself in favor of Story for the sum of $60,000, which went into the account of Story, and was paid by the bank on which it was drawn.    And on this state of the facts the position was taken in behalf of the plaintiff that the $60,000 contributed by the certified check of Story to the capital of the firm was not intended to remain in that firm, but was intended to be repaid, and was in fact repaid, in this manner to Mr. Story.    But evidence was given which tended to controvert the correctness of this position; for it was testified by the partner John Paret that the $60,000 contributed by Story was never withdrawn from the firm, but that it remained as a part of its capital and in its business until it failed, and was in that manner lost.    He was interrogated as to whether an agreement was not in fact made between himself and Story that, in case Story contributed the $60,000 as special capital to the partnership, it should be returned in this manner, or substantially in this manner, to him.    But he denied the existence of any agreement or understanding of that description, and testified that Story had applied to him for the payment of the entire sum of $75,000, and that he had finally agreed that he would pay to Story the sum of $60,000 of this amount, but that payment of the amount was not conditional upon Story contributing the sum of $60,000 to the capital of the partnership.    And his testimony was to the effect that he could, by means of loans, have paid Story this sum of $60,000 independently of the contribution of a like amount by the latter to the capital of the firm.    There was, it is true, substantial ground for an inference that Story was to be relieved for the contribution to be made by him to the capital of the firm by the payment to him afterwards of this sum of money.    But neither the proof, nor the facts established by it, was so conclusive as to justify the court in with-

drawing this subject from the consideration of the jury. These contemporaneous transactions were denied to have been the result of any agreement whatever connecting the one with the other; and, if there were such an agreement or understanding, its existence was to be derived by way of inference from the conduct and acts of the parties. And, where the inquiry involves such an inference, it has been considered the province of the jury, and not of the court, to decide whether or not it should be deduced. And that was the view maintained under somewhat similar circumstances in the case of *Bank* v. *Sirret, supra;* and also in that of *Manhattan Co.* v. *Phillips,* 109 N. Y. 383, 17 N. E. Rep. 129. The jury might very well have found differently from what they did upon this evidence. But whether they should do so, or render the verdict that they did, was strictly within their province, as the law has been sanctioned and followed.

By the statute under which this partnership was formed it was necessary, to comply with its provisions, that an affidavit should be made by at least one of the general partners, and filed with the other papers, stating that the sums specified in the certificate to have been contributed by the special partner had been actually and in good faith paid in cash. 2 Rev. St. (6th Ed.) 1154, § 7. Such an affidavit, sworn to on the 3d of January, 1882, by John Paret, the controlling general partner, was made and filed with the other papers. But it was insisted, in further support of the application of the plaintiff for the direction of a verdict in its favor, that this affidavit was untruthful, and that it was made before the special capital had in fact been contributed, and, as the evidence of the witness John Paret was first given, it directly tended to prove that it was made previous to the time when the check for the special capital was placed at the disposal of the firm. But this was afterwards corrected by the witness stating that but one paper was signed before the check was received and deposited, which was the articles of agreement, and that it was after that when the other papers which were executed were in fact completed. This affidavit was one of those papers; and, if the witness was right in his final testimony upon this subject, the affidavit was not made prior to the time when the check was received and the deposit of it had been made. There was other evidence from the other partners which had a tendency to discredit the final statement of this witness, but it was still uncertain and indefinite as to the fact, and that left it to be an inquiry proper only for the jury to make. And it was submitted to them by the court as favorably to the case of the plaintiff as the law and the evidence allowed that to be done, and their verdict as to this fact has been so far supported by the proof as to render it the duty of the court to sustain it; for it certainly cannot be inferred in this state of the proof that the affidavit which was made on the day when the special capital was in this manner contributed was made prior to the time when the check was in fact delivered to the other members of the firm by Mr. Story, and actually deposited by them. The inference on the contrary which the jury adopted seems to have been well supported; for this business was transacted in the office of Mr. George W. Parsons, an experienced lawyer, where all the parties to it were present, and it cannot reasonably be supposed that he would have permitted the affidavit to have been made before it could truthfully be taken by this general partner.

At the time when the checks forming the capital of the firm were deposited, another check drawn by the firm for the sum, as it would seem by the evidence, of $120,000, was presented to the bank, in which the deposits were made and certified by it. And this check was returned at once to the office of Mr. Parsons, and there, or soon afterwards, used in making the payment which was made on the purchase of the stock of the preceding firm. And from these facts it might, not without reason, have been inferred by the jury that it was agreed that this use of the capital of the new firm should be made in purchasing the stock and fixtures of the immediately preceding firm. And,

if that agreement had been made prior to the formation of the last firm, then this firm would have been a general, and not a limited, partnership; for its effect substantially would have been to have made its capital the stock and fixtures of the preceding firm. But the further evidence in the case failed to prove the existence of any agreement to this effect. It was, according to the evidence given by the witnesses, anticipated or expected that the new firm would purchase the stock of the immediately preceding firm. But nothing was stated to have taken place creating any agreement or understanding to that effect. And this, as well as the other inquiries, was accordingly left in such a condition as to bring it within the proper province of the jury. A mere expectation that the capital of the final firm would be employed to purchase the stock of the preceding firm would not be sufficient to deprive the former of its character and privileges as a limited partnership; for if at the time the capital was so received, as the proof showed it to have been contributed, there was no actual agreement or understanding that it should be used or employed in this manner, the firm would be at liberty, when it was received, to use its capital, either in this or any other direction, as it should appear to be judicious or warranted by the circumstances; and, if it was left at liberty so to use the contributed capital, then it could not be held as a matter of law that the attempt to form the limited partnership was unlawful. But the inquiry would be one for the jury to settle, as the law was construed and applied in the case of *Bank* v. *Sirret, supra.*

After the formation of this partnership, loans of money were made by it to the preceding firm, and by the latter also to this firm; and upon these facts it was urged at the trial that there had been a change in the business which the final firm was designed to carry on. But no change in that business appears to have taken place. It was the clothing business, and it continued to be carried on down to the time when the property of the firm was attached. Beyond that the making or existence of these loans was not brought to the knowledge or attention of Mr. Story at any time, and the law has not provided that he should become subject to a personal liability for the debts of the firm simply because mutual loans or accommodations of this description should in this manner have taken place. It appears by the evidence that interest had been paid to Mr. Story upon his capital, and in July, 1883, John Paret brought the fact to his knowledge that the capital of the firm had become impaired, and as a consequence he could not draw interest upon his capital, but should replace it. And the witness states that either upon that day, or within a day or two, he gave him a check for the amount, and in that manner it was restored to the firm. There were exceptions taken to the decisions of the court on the admissibility of certain items of evidence. But they have not been presented as supporting the appeals; and an examination of the portions of the case to which they refer results in the conclusion that they afford no reason for disturbing the judgment. As the case was presented by the evidence, it depended upon the disposition of what were questions of fact, and they were very clearly presented by the court to the jury. It is scarcely possible that there could have been any misunderstanding on their part as to the controlling inquiries to be considered and decided. There was sufficient evidence concerning each of them for the jury to act upon, and their verdict should now be held conclusive as to the rights and obligations of these parties. Both the judgment and the order should be affirmed. All concur.