## ROTHCHILD et al. v. HOGE et al.

*(Circuit Court, E. D. Virginia. May 26, 1890.)*

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCES—SPECIAL PARTNERSHIPS.
    Under Code Va. § 2874, providing that no assignment made by an insolvent special partnership for the purpose of giving preferences shall be valid, creditors who have filed bills against a special partnership which has made such an assignment, under Code Va. § 2460, providing that suits may be brought by creditors to avoid assignments with intent to delay, hinder, and defraud creditors, prohibited by section 2458, and that the creditors filing such bills shall have a lien on the property of the partnership from the date the bills are filed, are not entitled to have their full claim paid out of the assets of the firm according to the dates of filing their bills, to the exclusion of other creditors. All creditors are entitled to share in the assets *pro rata.*

2. SPECIAL PARTNERSHIP—PAYMENT OF CAPITAL IN CASH.
    A check given by a special partner, as his capital in the firm, which is received by a bank, and without verification placed as cash to the credit of the firm, and which on presentation is paid by the bank on which it is drawn, is a sufficient compliance with a statute requiring the capital of a special partner to be paid in cash.

3. SAME—RETROSPECTIVE LAWS.
    Act Va. Feb. 29, 1888, (Acts Va. 1887-88, c. 268,) amending Code Va. 1887, § 2871, and requiring the names of special partners to be posted, together with the names of the general partners, conspicuously on the front of the firm's place of business, does not apply to special partnerships entered into before the act took effect.

In Equity.

*Slater & Montague, Robt. L. Montague,* and *Meredith & Cocke,* for complainants.

*Guy & Gilliam* and *Waller R. Staples*, for defendants.

HUGHES, J. Martin & Powers conducted a business in notions and white goods in Richmond, Va., as a special partnership, from the 6th February, 1886, till their failure, on the 5th December, 1889. The general partners were Saml. T. Martin and William A. Powers. The special partners were Edgar D. Taylor and Howard Swineford. The original input capital of the firm was $12,500. Of this Taylor put in $5,000 in a check on the Planters' National Bank, of Richmond; Swineford put in $5,000, partly in a check of $1,000 on the Planters' Bank, and the rest in a check of $4,000 on the National Bank of Virginia, at Richmond; and Martin put in the remaining $2,500. Before the certificate of special partnership was made and sworn to, on the 6th February, 1886, the Planters' National Bank had received all the checks making up the $12,500 of capital, (which except one were drawn on itself,) as cash; and had entered upon its own books, and credited in a pass-book given to the firm, a credit of $12,500 as "cash" to the new firm of Martin & Powers. Due publication was made on the day of this deposit, in the evening newspaper of Richmond, of the formation of the partnership, of the names of the respective partners, general and special, and of the amount of capital contributed each by the special partners. There is no complaint that any of the requirements of the laws of Virginia respecting special partnerships were not complied with, except as will be hereafter adverted to.

Among the provisions of the laws of Virginia in force on the 6th February, 1886, and still in force, are the following: What is now section 2873 of the present Code provides that, in case of the insolvency of a special partnership, no special partner shall be paid as a creditor of the firm until all its other creditors are satisfied; and what is now section 2874 of the Code provides that no assignment made by an insolvent special partnership, for the purpose of giving a preference over creditors of the firm to one or more creditors, shall be valid. In the original law of Virginia, relating to special partnerships, (section 22, c. 67, acts 1836-37,) it was provided that every special partner who shall violate the provision against deeds of preferences just named, or shall concur in or assent to such violation, shall be liable as a general partner. But this section became obsolete after the adoption of the Code of 1849, by having been intentionally omitted from that revision.

About two years after the formation of the special partnership of Martin & Powers, the legislature of Virginia passed a law[1] which it declared should be in force after May 1, 1888, amending the general law of special partnerships, by requiring that the names of the general and the special partners should appear conspicuously upon the front of the place of business of every special partnership; and making special liable as general partners in default of compliance with this requirement. The act does not refer in terms to pre-existing partnerships. The evidence taken in

[1] Act Va. Feb. 29, 1888, (Acts 1887-88, c. 268,) amending Code Va. 1887, § 2871.

this cause shows that the names of the special partners, Edgar D. Taylor and Howard Swineford, were not placed conspicuously upon the front of the place of business of Martin & Powers after the 1st of May, 1888.

The Code of Virginia, re-enacting the statutes of 13 & 29 Eliz. on the subject, in section 2458 provides that assignments of property made with intent to delay, hinder, and defraud creditors shall be void as to creditors, though remaining valid as between the parties to them. In section 2459 it provides similarly as to voluntary gifts or conveyances of property. And in section 2460 it authorizes suits to be brought by creditors to avoid such assignments and conveyances as are described in sections 2458 and 2459 before judgments obtained; and gives liens to creditors instituting such suits, from the times of commencing them, and to creditors filing petitions in such suits, from the times, respectively, of filing their petitions. But the supreme court of appeals of Virginia, in numerous decisions, has held that assignments for the benefit of creditors, which give preferences to one or more creditors or classes of creditors over others, if otherwise free from fraud, are not void merely on account of preferences being given.

The law and the facts of this case being as thus set forth, the two general partners of the firm of Martin & Powers executed to Howard D. Hoge, as trustee, on the 5th December, 1889, a deed of assignment, by which they conveyed all the stock in trade, choses in action, open accounts, office furniture, and all the property, social and individual, belonging to them, to their trustee, for the benefit of the creditors of the firm; and by which, distributing their obligations to creditors into five different classes, they provided that the assets of the firm should be sold, and payment of the proceeds made, to the creditors holding their obligations in the order named in the deed, paying those of the first class in full, and so on, each successive class to receive payment in full according as the fund would hold out. Except one or two banks, the names of the creditors of the firm do not appear upon the face of the deed; but it appears from the evidence taken in the cause that the two special partners, E. D. Taylor and H. Swineford, were indorsers for the firm to an aggregate amount of $15,000. It does not appear that either of the special partners had art or part, either direct or indirect, in the making of this assignment. The complainants' bill and supplemental bill assails the deed thus described, prays that it be set aside as void, and that the fund which has resulted from the sales and collections of the trustee shall be paid, first, to V. Henry Rothchild & Co., who filed the bills of complaint, and thereby brought the fund into this court; and afterwards, in the order of the respective dates of filing their petitions, to the numerous petitioners who have filed claims in this cause as prescribed by section 2460 of the code above cited. The supplemental bill, moreover, charges that the special partners of the firm are liable as general partners for the entire indebtedness of the firm, and prays the court to enforce that liability. I come, therefore, to pass upon these prayers of the bills.

The firm of Martin & Powers having been as to the public and its creditors a special partnership, it is clear, and indeed conceded, that the gen-

eral partners who executed the assignment of the 5th December, 1889, had no power to do so, and that the deed is invalid. Section 2874, which is the law of special partnerships, declares that no assignment can be made of the effects of such a firm that shall give preferences between its creditors.

But it is contended by counsel for complainants and petitioners that the making of the assignment in this case was a fraud upon this section 2874 of the code, and therefore that they are entitled to the benefit of section 2460, which gives preferences to vigilant creditors assailing the assignment according to the degree of their vigilance. Accordingly they pray the court to do what section 2874 forbids the partners to do. They call upon it to make a decree declaring a greater number of preferences between the creditors of this firm than the faulty instrument which they assail as fraudulent itself created. Logically, this would be condoning one fraud upon section 2874 with another,—a lesser fraud with a greater one. The *pro rata* payment of creditors is the fundamental law of special partnerships. All contracts made with special partnership firms, all credits given them, are, in contemplation of law, made and given on the faith of an equal distribution of the assets in the event of failure, on the faith of section 2874, which forbids preferences as between creditors. To violate this rule of distribution, by preferring any creditor or class of creditors over others, would be to break faith with all, and to repudiate the fundamental principle on which the business of this firm was transacted with the public. Such a proceeding cannot be thought of. The effects of this firm must be distributed *pro rata*. The statute law happily requires the court to follow the golden rule of chancery, "equality is equity," in the distribution of this fund.

Complainants and petitioners further pray the court to subject the special partners of this firm to liability as general partners to its creditors. The first ground on which this demand is based, is that Howard Swineford, one of the special partners, paid $4,000 of his in-put stipend of $5,000 with a check on the National Bank of Virginia, of this city. They cite decisions rendered by various courts to the effect that the cash required by statute to be paid as the capital of special partnerships must be money itself, and cannot be substituted with checks; this ruling being founded on the principle that nothing can be regarded as the capital of such a firm but money that is placed within its absolute control. Counsel for the special partners cite other cases in which other courts have held that checks, undoubtedly good, may be received as money.

It is easy to reconcile these decisions. When checks are used as substitutes for cash, or with the intention of avoiding the immediate payment of money, they are held to be an evasion of the law requiring the in-put quotas of special partners to be paid in cash, and to be an insufficient compliance with the requirements of law in that regard. The check under consideration was that of a man in the highest credit in Richmond, drawn upon a bank but a few doors distant from the bank which received it on the same street, and payable *instanter*. The only person competent at the time to question its value was the bank which

received it, and that bank was so confident of its value as cash that, without sending it for verification, it forthwith placed the amount of it to the credit as cash of Martin & Powers. It would offend the sentiment of the commercial and banking community to hold that such a check, so received, and so credited, which was duly paid, and the proceeds of it fully used by the bank receiving and the firm credited with it, was not cash; and it would inflict an injustice upon these special partners, which no court of conscience could be capable of perpetrating, to hold them responsible in thousands of dollars beyond their in-put for the general debts of this firm, on a pretence so narrow and so technical.

It is further insisted that, inasmuch as the provisions of the act of Assembly of February, 1888, which required the names of special partners to be posted conspicuously in front of the places of business of special partnerships after the 1st May, 1888, was not complied with by the firm of Martin & Powers after that date, Mr. Taylor and Mr. Swineford became afterwards liable as general partners. It is not worth while to inquire whether this act of 1888 was a remedial law, such as must have retrospective operation; or to enter into the discussion so elaborately conducted at the bar, whether general remedial laws operate more or less universally from and after the dates when they come into effect. The contract between the partners of this firm *inter se*, and between each of them and the public at large and the firm's creditors, as to the liability of its special partners, was determined and defined by the laws of Virginia regulating special partnerships, which were in force when the firm of Martin & Powers was formed,—the laws as they were on the 6th February, 1886. If the special partners complied then and throughout the existence of the firm with the requirements of the law which entered into and formed the basis of their contract with the general partners and the public when the partnership was formed, they performed their whole duty. No law on the general subject of such partnerships which, amending a previous one, imposes new and additional duties upon them, can justly be held by the courts to apply to pre-existing partnerships, unless the new law so declares in express terms. No one should be subject to heavy pecuniary liabilities by mere implication of law. Special partners are very often non-residents of the places or the states in which the business of their firms are conducted. It is not competent for them to engage in the personal management of such business. The law expects them to hold aloof. If, after complying with all the preliminary duties required by law, with a view to their protection as special partners, and after leaving the business of the firm to go on under the management of general partners, new laws are passed requiring additional duties to be performed, and subjecting them to liabilities in default of performance, never contemplated by them, the courts will not presume that the new legislation was intended to apply to their case. When the new law makes the non-compliance with new requirements the ground for imposing heavy pecuniary liabilities, it is of the nature of penal legislation, and must be express and specific in its terms. I do not think the special partners in this case became liable as general partners by the non-posting of their

names before their firm's place of business, after the 1st May, 1888.  I will sign a decree drawn in accordance with the principles settled by the court of appeals of Virginia in the case of *McArthur* v. *Chase*, 13 Grat. 683, so far as it is applicable to the case at bar.