912

## KISTLER et al. v. GINGLES et al.

No. 13755.

United States Court of Appeals
Eighth Circuit.

Jan. 18, 1949.

G. C. Hardin, J. Clib Barton and Bruce H. Shaw, all of Fort Smith, Ark., and Amelia Patterson and Roy Frye of the firm of Frye & Patterson, both of Sallisaw, Okla., for appellants.

Ernest Briner, of Benton, Ark., and Harry P. Warner and Cecil R. Warner, both of Fort Smith, Ark., for appellees.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is to reverse that part of a judgment which dismissed plaintiffs' action as to two of the defendants after trial to the court on the merits. There was jurisdiction by reason of diversity of citizenship and amount involved and the judgment was based on the findings and conclusions of the court which are brought up in the record. The plaintiffs, doing business as R. P. Kistler and Sons, a partnership, may be more conveniently referred to herein as Kistler, and the two defendants as to whom the action was dismissed, are H. J. Gingles and H. W. Anderson, the appellees herein.

The record shows that on April 23, 1945, Kistler leased a certain coal mining property near the town of Rock Island, LeFlore County, Oklahoma, to one H. F. McMahon for the term of 99 years on the basis of a royalty of 25 cents per ton on all coal produced with a minimum royalty of $6,250.00 for the first year and $12,500.00 for the second and each year thereafter, said rentals to be paid on or before the expiration of each year. On April 20, 1946, Mc-Mahon executed a written assignment of the lease to Rock Island Coal Company, a partnership, which agreed to pay the rentals and perform the convenants of the lease. The rentals for the first year were paid but default was made as to the year 1946 and Kistler on that account cancelled the lease, as authorized by its terms, on June 3, 1947.

The present action was brought by Kistler against McMahon individually and McMahon, H. J. Gingles and H. W. Anderson as partners doing business under the name of Rock Island Coal Company, to recover from them and each of them the unpaid rentals in the sum of $15,104.16, and judgment in that amount was awarded against McMahon, but the action was dismissed as to the other two defendants.

The defenses pleaded and relied on by them were in substance (1) that the Rock Island Coal Company was a Limited Partnership duly organized under the Arkansas statute in which McMahon was the general partner and Gingles and Anderson were special partners whose only obligation was to contribute to the partnership the sum of $20,000.00 and no more, and that each had fully complied with his obligation, and (2) that Kistler at all relevant times knew that the partnership was such Limited Partnership and that Gingles and Anderson were special partners whose obligation was limited as stated, and dealt with it as such, and waived any right to assert and was estopped to assert the claim sued on against them or either of them as general partners.

The court made detailed findings of the steps taken by defendants to organize the Rock Island Coal Company as a Limited Partnership under Sections 10558 to 10585 of Pope's Digest of the Statutes of Arkansas of 1937 [1] and concluded that "there was substantial compliance by the defendants with the provisions of said sections" and that "a valid and Limited Partnership was organized by the defendants by which the defendant H. F. McMahon was general partner and the defendants H. J. Gingles and H. W. Anderson were each special partners," and that the obligation assumed by each of the special partners to contribute $20,000.00 had been complied with and that they were "not liable as general partners or otherwise to the plaintiff." The action against them was accordingly dismissed.

On this appeal it is contended for Kistler (1) that the finding and conclusion that the Arkansas law of Limited Partnership had been substantially complied with by defendants were clearly erroneous and contrary to the evidence, and (2) that Gingles and Anderson had by their words and conduct become obligated as general partners to pay the rental due the plaintiffs.

The appellees seek to sustain the judgment in their favor on the ground upon which it was rendered by the trial court, but they also contend that it should in any event be affirmed on the ground that they were not in fact general partners and that Kistler had waived any right to assert and was estopped to assert that they were liable for the rent as general partners.

### Statement.

It appears that when the plaintiffs executed the lease to McMahon and he was put in possession of the property he began development work and expended thereon about $15,000.00 of which $7,500.00 was his own money and $7,500.00 was obtained by the sale of overriding royalty rights to five persons. He then interested Gingles and

---

[1] The relevant provisions are:

"Section 10561. The person[s] desirous of forming such partnership shall make and severally sign a certificate, which shall contain:

"First. The name of the firm under which such partnership is to be conducted.

"Second. The general nature of the business to be transacted.

"Third. The names of all the general and special partners interested therein, distinguishing which are general and which are special partners, and their respective places of residence.

"Fourth. The amount of capital which each special partner shall have contributed to the common stock.

"Fifth. The period at which the partnership is to commence, and the period at which it will terminate."

Section 10563 provides that the certificate shall be acknowledged and certified and filed in the office of the Circuit Clerk of the county in which the principal place of business of the partnership shall be situated.

Section 10565, in connection with the affidavit of the general partner, provides: "At the time of filing the original certificate and the acknowledgment, as before directed, an affidavit of one of the general partners shall also be filed in the same office, stating that the sums specified in the certificate to have been contributed by each of the special partners to the common stock have been actually and in good faith paid in cash."

Section 10566 provides: "No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed, as before directed; and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof as general partners."

Anderson, and together with Kistler they explored the possibility of obtaining a loan for development purposes from the Smaller War Plants Corporation through its Tulsa office. It was there learned that Gingles and Anderson would be required to personally endorse the note for any loan and they refused. As a result of the negotiations however it was agreed among defendants that a limited partnership should be formed to hold and operate the property under the lease and that Gingles and Anderson would each contribute $20,000.00 of the capital and have a third interest, and that McMahon would have a like interest provided he repurchased and restored the overriding royalty rights he had sold, and on July 28, 1945, a written agreement of Limited Partnership to that effect was entered into by McMahon as general partner and Gingles and Anderson as special partners. At the same time a certificate of such Limited Partnership was signed and acknowledged by the parties. Both documents were in fact executed July 28, 1945, but were dated back to May 1, 1945.

The certificate was filed and recorded July 28, 1945, in the office of the Clerk of the Circuit Court of Saline County, Arkansas, where the principal place of business of the partnership was to be situated. McMahon on the same day also made an affidavit dated as of May 1, 1945, and filed it in the same office on July 28, 1945, stating that each of the special partners above named had actually and in good faith paid in lawful money to the common stock of the Limited Partnership each the sum of $20,000.00 set forth in the certificate.

Neither Gingles nor Anderson however had actually paid into the partnership account the sum declared, but each did pay various sums from time to time as the money was needed by the partnership, and each had paid his total requirement of $20,-000.00 by December 31, 1945. McMahon as of July 28, 1945, had expended on the property for development purposes approximately $15,000.00, and he had agreements for repurchasing and restoring the overriding royalty rights he had sold, and he did obtain and pay for them but not until about August 14, 1945. The certificate of partnership showing its terms, name, purposes,

nature of the business and the name of the general partner and of the special partners was published as required by the statute, including the following declaration as to the limitation of liability of the special partners:

"That no further liability shall be on the special partners, except the payment of said $20,000.00 each to this said Limited Partnership as above stated."

In July, 1945, McMahon applied at Little Rock to the S.W.P.C. for a loan of $100,-000.00 on behalf of the partnership, which application was approved in November, but certain conditions imposed in the approval could not be met, principally the requirement of personal endorsement of the note by Gingles and Anderson. In December of 1945 an amended application for a loan of $60,000.00 was filed by McMahon, and in January, 1946, the plaintiff Kistler was sent to Washington as representative of the partnership to expedite that matter if possible. As one of the results of Kistler's trip the amended application was approved without requiring Gingles and Anderson to make personal endorsement, but for other reasons the loan was never consummated and further efforts to finance the operation of the mine ended. The cancellation of the lease followed.

### Opinion.

(1) The court made the following finding of fact:

"The partnership agreement and the original certificate were not in fact executed on May 1, 1945, but were executed a short time before the recording of said agreement and certificate on July 28, 1945. Neither of the defendants Gingles and Anderson had actually paid into the partnership account the sum of $20,000.00 each on the date of the execution of the partnership agreement and the original certificate, nor had said sums been actually paid on the date of the recording of said agreement and certificate, but the defendants Gingles and Anderson were ready, willing and able at all times to pay the amount of the subscriptions and did pay the same as and when needed by the partnership, and all of said amount had actually been paid by December 31, 1945."

The appellant insists that the proof was contrary to the finding that Gingles and Anderson were ready, willing and able to pay their subscriptions when needed by the partnership in that it was clearly established that on two occasions large sums of money, $8,250.00 on October 13, 1945 and $10,000.00 on November 27, 1945, were borrowed by the partnership from a local bank before the subscriptions had been fully paid in.

But the Arkansas Limited Partnership statute requires unequivocally in Section 10561, that:

"The person[s] desirous of forming such partnership shall make and severally sign a certificate, which shall contain: * * * Fourth. The amount of capital which each special partner shall have contributed to the common stock."

The language of Section 10565 is equally plain:

"At the time of filing the original certificate and the acknowledgment, as before directed, an affidavit of one of the general partners shall also be filed in the same office, stating that the sums specified in the certificate to have been contributed by each of the special partners to the common stock have been actually and in good faith paid in cash."

There is no room for argument in the face of the provisions of the Arkansas Limited Partnership statute that persons "desirous of forming such partnership" may comply with its terms by mere willingness or ability to contribute to its common stock or by subscription of credit. The statute clearly calls for a cash payment to have been made at the time of the filing of the certificate and affidavit. Defendants failed to comply with this mandate. The undisputed proof on which the finding of the court was made was that Gingles and Anderson had paid in cash when the certificate and affidavit were filed approximately $4,500 each, whereas the certificate read that each had contributed $20,000.00. Not until nearly five months later had each paid in his entire $20,000.00. It is not a case where goods instead of cash were contributed, Cf. Anderson v. Stone, 24 Ill.App. 342, 350, nor where payment was made by check rather than actual cash, Cf. Chick v. Robinson, 6 Cir., 95 F. 619, 52 L.R.A. 833; Rothchild v. Hoge, C.C.Va., 43 F. 97; White v. Eiseman, 134 N.Y. 101, 31 N.E. 276, nor where the cash was put under the control of the general partner by way of a drawing account, Cf. White v. Eiseman, supra; Metropolitan Nat. Bank v. Palmer, 56 Hun. 641, 9 N.Y.S. 239. Gingles and Anderson retained control of their money and did not even execute a promise in writing to pay the $20,000.00 they expected to and ultimately did contribute. They simply did not comply with the statute and the conclusion that they had substantially complied was erroneous. It may not be sustained.

(2) It is contended for appellees however that even if the judgment may not be sustained on the ground upon which the trial court rendered it, it should nevertheless be affirmed on the ground that the evidence and the findings of the trial court supported by evidence established that Kistler had with full knowledge waived any right to assert and was estopped to assert against Gingles and Anderson the claim that they were general partners of Rock Island Coal Company or liable as such for the unpaid rent.

We do not doubt the power of this court to refuse to reverse a judgment of the trial court which settles the rights of the parties according to law, notwithstanding the trial court may have assigned erroneous reasons for the judgment. But we are not persuaded that this case presents appropriate occasion for the exercise of that power. It is clear that plaintiffs' partnership throughout the transactions involved was represented by and acted through Ralph P. Kistler, and his knowledge of Rock Island Coal Company and the relations of Gingles and Anderson to it, as well as his transactions with it and with them, were imputable to the plaintiffs, but there are no sufficient findings of fact by the trial court to present the issues of waiver or estoppel for decision here as matter of law, and in respect to those issues we are left to infer the facts from the voluminous record. The finding made by the trial court that "R. P. Kistler had actual notice of the existence of the limited partnership" is inseparably connected with the court's conclusion that such

limited partnership existed because "there was substantial compliance by defendants" with the Arkansas Limited Partnership law, which conclusion we hold to be erroneous.

The plaintiffs assert that Gingles and Anderson are liable to them for the unpaid rent by reason, among other things, of the provisions of section 10566, which reads:

"No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed, as before directed; and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof as general partners."

That section, it appears, has not been considered by the Supreme Court of Arkansas in relation to issues of waiver or estoppel, so that to determine such issues here this court would be required to make original declaration both of the law of Arkansas which controls on these issues in the case, and also original findings of the facts to be inferred from the evidence. That is beyond the function of the appellate court in the situation presented.

We hold that the error we have found in the judgment appealed from was prejudicial and the judgment is therefore reversed. The case is remanded for trial in accord herewith.

Reversed and remanded.