RALPH H. WHITE et al., Respondents, *v.* SAMUEL EISEMAN
et al., Impleaded, etc., Appellants.

The provisions of the Revised Statutes (1 R. S. 764, §§ 1 *et seq.*), in relation to the formation of limited partnerships, are remedial in their nature and will protect those who in good faith substantially comply with their essential requirements.

The organization of such a partnership is completed when and only when the requisite papers are filed, and if then every statement therein is correct, this is a substantial compliance with the provisions of the statute, and in the absence of bad faith, or of proof that a creditor has been misled by some technical inaccuracy in the statement when it was made, the special partner is protected.

In an action against defendants, as general partners, composing the firm of S. & P., for an indebtedness of the firm, two of the defendants alleged that they were special partners. Upon the trial said defendants produced in evidence a certificate of limited partnership, which was in the usual form, signed and acknowledged by the general and special partners August 3, 1886. The special partners the same day delivered to S. their check of even date on a solvent bank to the order of S. & P. for the amount of their contribution to the common stock, as stated in the certificate; this check was charged on their bank-book which was balanced the next day. The check was certified August fourth, and deposited to the credit of the firm August fifth, at 2 P. M., on which day, at 4.45 P. M., the certificate and affidavit required by the statute were filed. On August sixth, the check was paid to the bank in which

it was deposited. The affidavit, which was made August third, stated that the sum specified in the certificate as contributed by the special partners "had been actually and in good faith paid in cash." *Held,* that the certification of said check was an absolute appropriation of the money to the use of the firm and thus the certificate was rendered true when it was first used for a purpose contemplated by the statute, and so the statute was substantially complied with, and the special partners were not liable.

*White* v. *Eiseman* (58 Hun, 484), reversed.

*Durant* v. *Abendroth* (69 N. Y. 148), distinguished and limited.

(Argued May 5, 1892; decided May 31, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1890, which overruled defendants' exceptions, denied their motion for a new trial and ordered judgment for plaintiff on a verdict directed by the court.

This action was brought to recover from the defendants, as general partners composing the firm of Spencer & Perkins, a demand of the plaintiffs against that firm for goods sold and delivered.

The defendants Eiseman alleged in their answer that said firm was a limited partnership, composed of themselves as special partners and of Sidney S. Spencer and George E. Perkins as general partners.

On the trial it appeared that a certificate of limited partnership, in the usual form, was signed and acknowledged by the general and special partners on the 3d of August, 1886. On the same day the special partners delivered to said Spencer their check of even date on a solvent bank, payable to the order of Spencer & Perkins, for $10,000, the amount of their contribution toward the common stock, as stated in the certificate. Samuel Eiseman signed the check, deducted the amount thereof from the balance that he and Moses Eiseman then had on deposit in the bank and it was charged to them on their bank-book when balanced on the following day. The check was duly certified by the bank August fourth, and deposited to the credit of the firm August fifth at 2 P. M., on which day at 4.45 P. M., the certificate and affidavit were filed.

The check was paid on the sixth of August to the bank in which it had been deposited. The affidavit was made August third, the day that the jurat bears date, by Mr. Spencer, who stated therein " that the sum specified in said certificate to have been contributed by the special partners to the common stock has been actually and in good faith paid in cash."

At the close of the evidence the court directed a verdict in favor of the plaintiffs for the amount claimed and the exception of the defendants Eiseman to such direction was overruled by the General Term and a judgment directed on the verdict, one of the justices dissenting.

*A. Blumenstiel* for appellant.

*Frederick Mabbett* for respondent.

VANN, J. The primary object of the act authorizing limited partnerships was to encourage those having capital to become partners with those having skill, by limiting the liability of the former to the amount actually contributed to the firm. The next and incidental object was to furnish reasonable protection to those dealing with the concern by requiring certain acts to be done and public notice thereof given, so that all who desired might know the essential features of the arrangement. In order to prevent evasion and fraud, it was provided that any false statement in the certificate or affidavit should render all the partners equally liable. That provision, however, was not designed as a trap to catch the innocent and unwary, but as a bar to shut out the dishonest and fraudulent. While the courts were at first inclined to a strict construction against those thus seeking exemption from the common-law liability of partners, the tendency in this state is now toward a liberal construction, so as to accomplish the wise purpose of the act by uniting capital and labor in business enterprises, without excessive hazard to the former. (*President, etc., Manhattan Co.* v. *Laimbeer*, 108 N. Y. 578, 582; *Fifth Avenue Bank* v. *Colgate*, 120 id. 381, 396; *Metropolitan Nat. Bank* v. *Palmer*, 30 N. Y. S. R. 509; *Levy*

v. *Lock*, 47 How. Pr. 394; *Lawrence* v. *Merrifield*, 10 J. & S. 36; *S. C.*, 73 N. Y. 590; *Ropes* v. *Colgate*, 17 Abb. [N. C.] 136; 13 Am. & Eng. Cyc. of Law, 807.)

The more recent cases regard the statute as remedial in nature, and, looking to substance rather than form, protect those who, in good faith, substantially comply with the essential requirements. We now have a case before us where nothing of substance was omitted. The defect complained of neither misled nor injured the creditors who seek to take advantage of it. Payment having been made in the usual way practiced by business men, who regard a check with adequate funds behind it as cash, an affidavit was made accordingly, and the good faith of the affiant is questioned by no one. There was no intentional violation of the statute, and the failure in literal compliance consisted of the fact that the affidavit was not technically true when made, although both affidavit and certificate were true when filed. The exact question, therefore, presented for decision is whether there is substantial compliance, if the affidavit and certificate are true when, for the first time, use is made of them for a purpose contemplated by the statute?

In support of the plaintiffs' theory, we are referred to the case of *Durant* v. *Abendroth* (69 N. Y. 148), where it was said, in behalf of the four judges whose votes were effective, that the certificate and affidavit speak as of the day of their date. (P. 152.) This, however, was not essential to the decision, nor was it regarded as controlling, for in the third sentence following it is said that good faith would be of no avail " if the payment had not been actually made in cash when the certificate and affidavit were made *and filed.*" As that affidavit was filed on the day it was made, it spoke from the common date of making and filing, and the remark of the court relied upon by the plaintiffs is without special significance. In that case, the only payment made was by an uncertified check dated eight days after the certificate and affidavit were filed, and it was not paid until the tenth day thereafter, yet this court has pronounced it " a very stern and

technical application of the statute " to hold the special partner liable, even under those circumstances, and has declared that the principle should not be extended.     (*President, etc.,* v. *Laimbeer, supra,* p. 589.)

According to the statute, the partnership is not formed until the certificate has been recorded and the affidavit filed. (4 R. S. [8th ed.] p. 2493, § 8.)

The organization of the firm is completed by the filing of these papers, for the omission of the clerk to record was held in the case last cited not to affect the liability of the special partner.     The date of this culminating act, therefore, is of the highest consequence, because it is the time when the firm becomes ready for business, and when the safeguards should exist that are designed to protect third parties.     As was well said in a recent case : " It is the act of filing the certificate and affidavit which gives life to the partnership and confers immunity for the debts of the firm upon the special partner, and from that moment those who deal with the partnership become entitled to know the truth as to its formation, and from and after that time a wrong is done to those who deal with it, if a false statement is published through the filing of the certificate.     The truth of the statements contained in the certificate is to be determined, therefore, at the time of its being filed with the county clerk.     If true at the instant of filing, there is no liability, because, being true at the instant of the creation of the limited partnership, they fulfill the purpose for which the law was enacted."     (*Ropes* v. *Colgate, supra,* p. 143.)     We adopt this language as applicable to the case in hand, and extend it, in view of the circumstances already stated, to the affidavit filed with the certificate.     In reaching this conclusion, we are guided by the object of the legislature in passing the statute, which should not be defeated by exalting the letter and subverting the spirit.     The formation of limited partnerships should not be made difficult or dangerous by technical construction.     If every statement contained in the papers required to be filed is true at the time of filing, nothing further is necessary for the protection of

creditors, who are thus given all the information that it was the policy of the statute to furnish. More than this should not be exacted in the absence of an actual intent to deceive. As the special partner cannot make the affidavit himself (§ 7), he should be protected if it is true when filed, as that is the first use that is made of it, and the occasion when he is first charged with the duty of examining it. It is then that it becomes material and then that it must be true, at the peril of general liability if it is untrue. If upon then examining it he found its contents were true, it would be a harsh and unreasonable rule to require him to ascertain, if he could, the precise date when the check was cashed or certified, and comparing it with the date of the jurat, to decide, at the peril of losing all he had, which date preceded the other. The affidavit is simply evidence of the facts therein stated, and if those facts are true when such evidence is first used, the statute is satisfied, unless some furtive purpose existed when the verification was made. If any business had been done between the making and filing, or if it had been a mere artifice to evade the statute, or if any creditor had been misled by the technical inaccuracy of statement, when viewed from the date of the jurat, a different question would have been presented from that now before us.

Our reasons for holding that the affidavit was true when filed may be stated in a few words. The check was delivered to the general partners on the third, certified on the fourth, deposited to the credit of the firm on the fifth, before the papers were filed, but was not paid to the bank where it was deposited until the sixth.

The general rule relating to payment of capital by the special partner, as stated by Mr. Bates in his work on Limited Partnerships, section 45, is that "the fund must be in existence in money and in the sole control of the general partner on the day the partnership is formed, free from all contingencies except those arising from the proper business of the concern." This is in substantial accord with the authorities, which hold that payment in goods, notes or even government

bonds, worth more than par, is insufficient. (*Van Ingen* v. *Whitman*, 62 N. Y. 513; *Haviland* v. *Chace*, 39 Barb. 283; *Haggerty* v. *Foster*, 103 Mass. 17.)

In *Durant* v. *Abendroth* (*supra*) the certificate and affidavit were filed December twenty-third, on which day post-dated checks, payable December thirty-first, were given by the special to the general partner, but they were not paid until the second of the following month, and it was held that this was not a payment in cash. The court, however, said: "If the special partner had paid the money to the bank to the credit of the general partners, or deposited it with any third party for the express purpose of being paid to the firm at the commencement of the partnership, and had appropriated it to that purpose in such manner as to part with all control over it, there would be much force in the argument that this was a payment of his contribution of capital." (Page 153.)

In the *Metropolitan Nat. Bank* v. *Sirret* (97 N. Y. 320), the usual papers were filed with the county clerk, a check drawn, dated and delivered by the special to the general partners, and the check deposited by them in the bank, on which it was drawn to the credit of the firm, all on the same day. No money was actually paid, but as there was a transfer of credit by the bank from the special partner to the partnership, it was held sufficient.

In the *Metropolitan Bank* v. *Palmer* (30 N. Y. S. R. 509), the delivery of a certified check was held a valid payment within the meaning of the act, because "the capital was as completely subjected to the control and disposition of the firm as though the money were drawn upon it and it was in form paid over in cash." See also *Lineweaver* v. *Slagle* (64 Md. 465), and *Seibert* v. *Bakewell* (87 Pa. St. 506).

We think that where the money is actually in the bank to the credit of the special partner, and he gives absolute and final control of it to the general partner, it should be regarded as a payment in cash. The delivery of a certified check to the payee has this effect. (*Clewes* v. *Bank of New York*, etc., 89 N. Y. 418; *Meads* v. *Merchants' Bank of Albany*,

25 id. 143; *Farmers and Mechanics' Bank* v. *Butchers and Drovers' Bank*, 16 N. Y. 125.)

While the check in question was delivered by the special partner on the third without certification, it was presented to the bank by the general partner on the fourth, and certified while in his hands. In other words, when it was in his power to obtain cash on the check, he procured it to be certified instead of paid, which, as between the firm and the special partner, was a payment, and discharged the latter from liability on the check. (*First National Bank of Jersey City* v. *Leach*, 52 N. Y. 350.) On the same day the bank charged the amount of the check to the special partners on their bank book and deducted it from the balance to their credit. Thus the special partners lost control of the money, the general partners obtained control of it, and there was an absolute, final and irrevocable appropriation of it to the use of the firm on the fourth, or the day before the certificate and affidavit were filed.

We think that the exception taken by the defendants requires a new trial.

The judgment should be reversed and a new trial granted, with costs to abide event.

All concur.

Judgment reversed.