CHICK et al. v. ROBINSON et al.

(Circuit Court of Appeals, Sixth Circuit.    June 6, 1899.)

No. 645.

1. EVIDENCE—PARTNERSHIP BOOKS—ADMISSIBILITY AGAINST SPECIAL PARTNER.
    Entries in the books of a partnership in Michigan are admissible against a special partner who is given the right by statute to "examine into the state and progress of the partnership concerns" from time to time, and to advise as to their management.

**2. PARTNERSHIP—CASH CONTRIBUTED BY SPECIAL PARTNER—CHECKS.**

Under the limited partnership statute of Michigan (How. Ann. St. § 2342 et seq.), which requires the filing of an affidavit stating that the amount of a special partner's contribution to the capital stock as shown by the certificate of partnership has been actually and in good faith contributed, in money or property at cash value, a check given to the firm, which was good when delivered, and paid on presentation, and which could be presented at any time, constitutes a contribution of "cash," and justifies an affidavit that such a contribution had been made in good faith, though the check was not presented for payment until afterwards.

## In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This is a writ of error to a judgment in favor of the defendant A. W. Comstock in a suit brought by Swain T. Chick and William T. Chick, co-partners as Chick Bros., citizens of Massachusetts, against Henry S. Robinson, Richard G. Elliott, and Andrew W. Comstock, co-partners as H. S. Robinson & Co., on a note of the firm for $2,166.70. A verdict and judgment were entered against Henry S. Robinson and Richard G. Elliott without controversy. Andrew W. Comstock defended against the note on the ground that he was a special partner, under the statutes of Michigan, and was not liable on the note. The sections of the statute of Michigan providing for limited partnerships will be found in Howell's Annotated Statutes, as follows:

"Sec. 2342. Limited partnerships may consist of one or more persons, who shall be called general partners, and who shall be jointly and severally responsible as general partners now are by law, and of one or more persons who shall contribute a specific amount of capital, in cash or other property, at cash value, to the common stock, who shall be called special partners, and who shall not be liable for the debts of the partnership, beyond the amount of the fund so contributed by them respectively to the capital, except as hereinafter provided."

"Sec. 2344. The persons desirous of forming such partnership, shall make and severally sign a certificate, which shall contain: (1) The name or firm under which the partnership business is to be conducted. (2) The general nature of the business to be transacted. (3) The names of all the general and special partners interested therein, distinguishing which are general partners, and which are special partners, and their respective places of residence. (4) The amount of capital stock which each special partner shall have contributed to the common stock. (5) The period at which the partnership is to commence, and the period when it will terminate.

"Sec. 2345. Such certificate shall be acknowledged by the several persons signing the same, before some officer authorized by law to take the acknowledgment of deeds, and such acknowledgment shall be made and certified in the manner provided by law for the acknowledgment of deeds for the conveyance of land.

"Sec. 2346. The certificate so acknowledged and certified shall be filed in the office of the county clerk of the county in which the principal place of business of the partnership shall be situated, and shall be recorded at length by the clerk in a book to be kept by him; and such book shall be subject, at all reasonable hours, to the inspection of all persons."

"Sec. 2348. At the time of filing the original certificate and the acknowledgment thereof, as before directed, an affidavit of one or more of the general partners shall also be filed in the same office, stating that the amount in money, or other property at cash value, specified in the certificate to have been contributed by each of the special partners to the common stock, has been actually, and in good faith, contributed and applied to the same.

"Sec. 2349. No such partnership shall be deemed to have been formed, until such certificate, acknowledgment and affidavit shall have been filed as above directed; and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof, as general partners."

"Sec. 2354. The business of the partnership shall be carried on under a firm

in which the name of one or more of the general partners only shall be inserted, with or without the addition of the words 'and company,' or any other general term; and if the name of any special partner shall be used in said firm with his consent or privity, or if he shall personally make any contract respecting the concerns of the partnership, with any person except the general partners, he shall be deemed and treated as a general partner.

"Sec. 2355. During the continuance of the partnership under the provisions of this chapter, no part of the capital stock thereof shall be withdrawn, nor any division of interest or profits be made, so as to reduce said capital stock below the sum stated in the certificate above mentioned; and if, at any time during the continuance, or at the termination of the partnership, the property or assets shall not be sufficient to pay the partnership debts, then the special partners shall severally be held responsible for all sums by them received, withdrawn or divided, with interest thereon from the time when they were so withdrawn or divided respectively."

"Sec. 2364. A special partner may from time to time examine into the state and progress of the partnership concerns, and may advise as to their management; he may also loan money to, and advance and pay money for the partnership, and may take and hold the notes, drafts, acceptances, and bonds of or belonging to the partnership, as security for the re-payment of such moneys and interest, and may use and lend his name and credit as security for the partnership, in any business thereof, and shall have the same rights and remedies in these respects as any other creditor might have."

It appears by the evidence that Henry S. Robinson and Richard G. Elliott, as general partners, and Andrew W. Comstock, as special partner, entered into a partnership agreement: that the certificate was duly signed and acknowledged, stating the facts required in section 2344, and, among them, that Andrew W. Comstock, as special partner, had contributed $50,000 to the common stock. Henry S. Robinson, one of the general partners, in accordance with section 2348, made an affidavit on the 1st of May in which he stated "that the amount stated in said certificate to have been contributed to said limited partnership by said Andrew W. Comstock has been actually contributed by said Andrew W. Comstock in good faith to said limited partnership, in cash, and has been received by said limited partnership, and applied to the assets thereof." The certificate and affidavit were filed on the 2d of May. The plaintiffs contended that Comstock was liable as a general partner, for two reasons: (1) Because the statement in the affidavit was false, in that at the time of filing the certificate the amount in cash specified in the certificate to have been contributed by Comstock, the special partner, to the common stock, had not been actually and in good faith contributed and applied to the same. (2) Because Comstock, the special partner, had personally made contracts for the firm, and thus rendered himself generally liable as partner, under the statute. At the close of the evidence the court submitted both issues to the jury, but before a verdict was returned the trial judge withdrew the first issue from their consideration, instructing them that there was no evidence that the amount of $50,000 was not contributed in good faith in cash by Comstock as early as May 2d, as certified in the affidavit. Upon the second issue the jury found for the defendant.

Harrison Gier and F. W. Whiting, for plaintiffs.
Michael Brennan and Henry A. Haigh, for defendants.

Before TAFT and LURTON, Circuit Judges, and THOMPSON, District Judge.

TAFT, Circuit Judge. The main controversy in this court is whether there was any evidence which should have been submitted to the jury tending to show that Comstock did not, as certified in the affidavit of Robinson, actually in good faith contribute in cash the $50,000 to the stock of the company on the 2d day of May, 1893. The affidavit was dated the 1st of May, but it seems to be conceded

by the counsel for plaintiff in error that, if the money was contributed before the affidavit was filed, this is a sufficient compliance with the statute. The concession is justified by the decision of the court of appeals of New York in White v. Eiseman, 134 N. Y. 101, 31 N. E. 276. See, also, Ropes v. Colgate, 17 Abb. N. C. 136. The plaintiffs produced the books of the partnership, which show that on May 1st Comstock was credited by capital stock with the payment of $30,000, on May 24th with the payment of $10,155, and on June 3d with $9,845, making a total of $50,000. On August 1st he is credited by interest with $657, and was paid that amount. The interest thus credited and paid to him is at the rate of 6 per cent. on $30,000 from May 3, 1893, on $10,155 from May 4, 1893, and on $9,845 from June 3, 1893, all down to August 1st. This evidence taken from the books was objected to on behalf of defendant Comstock. He testified that he had never seen the entries in which the credits for his special capital were entered before coming into the court room, and that he did not begin to look into the books until two years after the firm was organized. By section 2364 a special partner is given the power "from time to time to examine into the state and progress of the partnership concerns, and may advise as to their management." It seems to us that entries in the partnership books which are open to his inspection, and with respect to which he may advise, are at least prima facie evidence against him of transactions of the firm. It has been so held under a similar statute in New York. Bank v. Huber, 75 Hun, 80, 26 N. Y. Supp. 961; Kohler v. Lindenmeyr, 129 N. Y. 498, 29 N. E. 957; Hotopp v. Huber (Sup.) 41 N. Y. Supp. 991.

Elliott, one of the partners, testified that Comstock contributed $50,000 in checks, $30,000 of which were deposited to the credit of the firm, and paid on the 2d day of May. Two of the checks were not deposited or collected on the 2d of May. A check for $10,155 was collected on the 24th of May, and the remaining check, for $9,845, was deposited and collected on the 3d of June. Elliott testified there was no agreement, so far as he knew, that these checks were to be held, but that they did not deposit them because they did not need the money. Robinson testified that everything was contributed, in what he considered cash items, on the 1st day of May. He said there was no due-bill of Comstock, but he had an indefinite impression that in the payments there was a note of Farrand, Williams & Clark for $10,155. Elliott and Robinson were called by the plaintiffs. It further appeared that a note of Farrand, Williams & Clark for $10,155, due to Comstock, was paid on May 24th at the Commercial National Bank, where it had been deposited by Comstock for collection, and that the note had been sold by the Commercial Bank to the Alpena Banking Company, Comstock's bank, and that when the note fell due the assistant cashier of the Commercial National Bank paid Comstock by giving his check for that amount to H. S. Robinson & Co. Comstock testified in his own behalf. His statement was that he gave $50,000 in checks, $30,000 of which were collected on the 2d of May. He testified that he had a note of Farrand, Williams & Clark for $10,155, which he brought down with him from Alpena, where he lived, intending to put it in as part of his contribution, together with a certified

check on the Alpena Banking Company, of which he was president and part owner, for $9,845; that when he examined the affidavit, and found the statement therein that the contribution had been made in cash, he did not use the note, but another check on the Alpena Banking Company for $10,155, and certified it as president of that banking company. He testified that there was no agreement by which his certified checks aggregating $20,000 should be held, but that when he found, on the 24th of May, that his check for $10,155 had not been deposited and collected, he concluded that it would save trouble to take up his check, and use the money collected on the Farrand note for that purpose. This he did. He says he objected seriously to the failure to credit him with interest on $50,000 from May 1st, when he delivered all the checks, that he called the attention of Robinson to the injustice, and that the failure to rectify the error was due to the financial difficulties of the firm which so soon followed. It appears clearly, without contradiction, that the checks were good upon the day upon which they were delivered to H. S. Robinson, and would have been paid, had they been presented, on that day. The question is whether the circumstances that they were not presented until the 24th of May and the 3d of June, that the payment of the 24th of May was made at the time when the Farrand, Williams & Clark note was paid, and that interest was not charged in favor of Comstock on the books of the company on the $20,000 until the 24th of May and the 3d of June, do not tend to justify an inference of fact contrary to the positive statement of Robinson, Elliott, and Comstock, that there was no agreement to hold the checks until the 24th of May and 3d of June. · If there had been such an agreement to hold the checks, their use by Robinson would clearly not have been an actual contribution in good faith in cash as of May 2d. In the absence of such agreement, Comstock was entitled to interest on $50,000 from May 1st, because he could not be charged with the delay in collection, as between the partners. The question is a close one, but we think that in view of the positive statement of Robinson and Elliott, called by the plaintiff, and of Comstock, called in his own interest, that no such agreement existed, in view of the uncontradicted explanation by Comstock as to the mode in which the entries happened to be made, in view of the uncontradicted statements by Elliott that the checks were deposited when they were needed, the inferences to be drawn from the book entries and the charge of interest create only a scintilla of evidence supporting the view that there was any agreement between the partners as to the withholding of the check. The evidence relied on by the plaintiff's amounts, when carefully and calmly considered, to nothing more than a suspicion that there may have been some agreement between the partners. We do not think it was enough to require the court below to submit the issue raised on the pleadings on this point to the jury.

It is objected that Comstock's checks for $20,000 were not an actual contribution in cash to the assets of the firm, even if there was no agreement by the general partners to withhold presentation, and even if they were good when delivered to the general partners. The early decisions construing limited partnership statutes were very

strict, and a literal compliance with the statute was enforced. In some states, notably in Massachusetts, this construction of such a law is still maintained. Haggerty v. Foster, 103 Mass. 17. In others a more reasonable view has been taken of late, and all that is required is a substantial compliance with the provisions of the statute, in good faith. Manhattan Co. v. Laimbeer, 108 N. Y. 581, 15 N. E. 712; White v. Eiseman, 134 N. Y. 301, 31 N. E. 276. This is the rule of construction adopted by the supreme court of Michigan in enforcing the statute. Hogan v. Hadzsits, 113 Mich. 282, 71 N. W. 1092.

Comstock's checks were certified, and it is expressly held by the court of appeals of New York that such instruments are equivalent to cash. White v. Eiseman, 134 N. Y. 301, 31 N. E. 276. But it is said that as the certificate was by Comstock, the president of the Alpena Banking Company, of his own check, the check was not certified in such a way as to bind the company. We shall not enter upon a discussion of this objection, because we are of opinion that a check, though uncertified, if good when delivered and paid when presented, is a contribution, in cash in good faith, although it may not be presented until after the filing of the certificate. If the check is good the general partners may obtain the money upon it at any time. If the drawer is dishonest, and subsequently reduces his bank balance so that the check is dishonored, this is conclusive evidence that the delivery of the check was not payment in cash in good faith, and the penal liability of the special partner accrues. The payment of checks as cash is in accordance with a well-known and reasonable usage of merchants, and we can see no reason why the statutes concerning limited partnerships should not be construed in the light of that usage. In the case of In re Palliser, 136 U. S. 263, 10 Sup. Ct. 1035, Mr. Justice Gray, speaking for the supreme court, defines the word "cash," used in a criminal statute, as follows:

"The word 'cash,' in this statute, as in common speech, means ready money, or money in hand, either in current coin or other legal tender, or in bank bills, or checks paid and received as money, and does not include promises to pay money in the future."

This, it seems to us, is a sufficient support for our conclusion. Doubtless the weight of authority in the construction of limited partnership statutes is to the contrary; but, as already said, the trend of modern cases is towards a more liberal and sensible view of such statutory requirements. Their purpose is to secure the actual payment of the money into the capital of the firm, and, failing that, to hold the special partner to a general liability. It seems to us that our construction of the statute secures this end, and it does not entrap the honest and unwary into unexpected liabilities, by enforcing a stricter rule as to what are cash payments than obtains in the commercial community. There is nothing in the decisions of the supreme court of Michigan upon this statute which prevents our giving such a construction to it as we think its language and its policy require. Rothchild v. Hoge, 43 Fed. 97. The judgment of the circuit court is affirmed.