HARTFORD NAT. BANK v. BEINECKE et al.

(Supreme Court, Appellate Division, First Department. March 6, 1903.)

1. LIMITED PARTNERSHIP—SPECIAL PARTNERS—LIABILITY AS GENERAL PARTNERS—BAD FAITH.

    Appellants had each of them contributed $50,000 to the capital of a limited partnership, which was afterwards dissolved, and the formation of a new limited partnership attempted. The certificate and affidavit filed pursuant to the limited partnership law recited that they had each in good faith paid into the new partnership $50,000. Section 8 of the law provided that, if any false statement was made in the certificate or affidavit, all the persons interested should be liable as general partners. There had been no accounting of the affairs of the first partnership when the new one was formed, so that appellants had not received back the money which they put into it, and they were informed they would each have to pay the same amount into the new partnership without any arrangement for its return, but that they might expect the money back from the first partnership as soon as its affairs were liquidated. They accordingly, on the day the new partnership was formed, each paid in $50,000, which was placed in a special deposit. Two days later the new partnership drew its check on the identical deposit in favor of each of the appellants for $50,000. *Held* to sustain a finding that appellants had not paid in the money in good faith as recited in the certificate and affidavit, and they were liable as general partners.

Appeal from judgment on report of referee.

Action by the Hartford National Bank against Bernhard Beinecke and Joseph Hesdorfer, impleaded with others. From the judgment entered on the report of a referee, the two defendants named appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

John E. Parsons, for appellants.

Charles E. Rushmore, for respondent.

INGRAHAM, J. The question presented upon this appeal is whether the appellants are liable as general partners under the provisions of section 8 of the Limited Partnership Law (title 1, c. 4, p. 765, 1 Rev. St.). That section provided that:

"No such partnership shall be deemed to have been formed until a certificate shall have been made, acknowledged, filed and recorded, nor until an affidavit shall have been filed, as above directed; and if any false statement be made in such certificate or affidavit, all the persons interested in such partnership shall be liable for all the engagements thereof as general partners."

Section 4 of the act provided that persons desirous of forming such a partnership shall make and severally sign a certificate, which shall contain—

"The amount of capital which each special partner shall have contributed to the common stock."

And section 7 provided that:

"At the time of filing the original certificate, with the evidence of the acknowledgment thereof, as before directed, an affidavit of one or more of the general partners shall also be filed in the same office, stating that the sums specified in the certificate to have been contributed by each of the special partners to the common stock have been actually and in good faith paid in cash."

And the decision of this appeal depends upon the truth of the statement in the affidavit of the general partner that the sum of $50,000 had been actually and in good faith paid in cash to the common stock of the said partnership of Emil Seidenberg, Stiefel & Co. by the appellant Bernhard Beinecke, and the like sum of $50,000 has been actually and in good faith paid in cash to the common stock of the said partnership by Joseph Hesdorfer.

The learned referee found as a fact that the said contributions or payments of the special capital by the special partners were not made in good faith, and that the statements in said affidavit of Emil Seidenberg, which was filed in the office of the county clerk, that the sum of $50,000 had been actually and in good faith paid in cash to the common stock of the said partnership by Bernhard Beinecke, and that the sum of $50,000 had been actually and in good faith paid in cash to the said common stock by Joseph Hesdorfer, were false statements; and we have to determine whether this finding of the referee was sustained by the evidence. The record is voluminous, and the full and satisfactory statement of the testimony by the learned referee renders it unnecessary for us to review it. A statement of the principal facts upon which his finding is based will suffice.

Prior to the 12th day of April, 1894, there appear to have been two general partnerships in existence engaged in the business of manufacturing, buying, and selling cigars, leaf tobacco, and other articles incident to the tobacco business; and on that day a special partnership was formed for the purpose of carrying on the business theretofore carried on by these two firms, under the firm name of E. Seidenberg, Stiefel & Co. By the partnership articles it was provided that the partnership was to commence on the 12th day of April, 1894, and to continue for five years; that Emil Seidenberg had contributed to the common stock of the partnership all of the assets of every nature of the firm of George P. Lies & Co., and the money he had invested in the firm of Seidenberg, Stiefel & Co., and that the amount of his capital so contributed was estimated and agreed upon to be $381,836.34; that neither of the other general partners contributed any cash or other property to the capital of the partnership, and the two special partners, the appellants here, contributed to the common stock in cash the sum of $50,000 each; that the general partners assign to the limited partnership all the assets of every description of the firm of Seidenberg, Stiefel & Co., and the limited partnership assume the payment of all the liabilities of the firm of George P. Lies & Co. In pursuance of this partnership agreement, a certificate, as required by the special partnership law, was executed by the partners, and the certificate and affidavit were duly filed and recorded; and it is not disputed but that there was then formed a valid limited partnership. After this partnership had been in existence a little over a year, Florian V. Simmonds, one of the general partners, commenced an action for a dissolution of that copartnership. The complaint in that action alleged the formation of the special partnership; that all the capital of the said firm, other than the cash contributed by the two special partners, consisted of various assets and properties used by the two former firms, which were then dissolved; that the statements of the value of the assets of the two firms contributed to the partnership of Emil Seidenberg were false, in that the assets and properties were not of the fair and reasonable value of the amount stated, and did not exceed the sum of $261,000; that the statement of the value of the said assets as $381,836 was false and untrue to the extent of more than $100,000; that the plaintiff was induced to enter that partnership by fraudulent misrepresentation as to the value of the contribution to the copartnership; and that, when the plaintiff discovered this fact, he notified all of the defendants that he rescinded the agreement by reason of the said fraudulent statements. The complaint further alleges certain irregularities in the conduct of the business of the firm, and the diversion by the defendant Emil Seidenberg of property which belonged to the firm, and asked for a dissolution of the partnership, and for an accounting and the appointment of a receiver. After this action had been commenced, an arrangement was made with Simmonds, the plaintiff in that action, by which, upon the payment to him of $10,000, he withdrew from the firm and discontinued his action; and on May 2, 1895, notice was given of the dissolution of this special partnership, such dissolution to take effect on the 3d day of June, 1895. This notice

was signed by all of the general and special partners, and was duly acknowledged.

During the continuance of this special partnership, the business was not profitable, and, the special partnership having thus been dissolved, the partners, with the exception of Simmonds, undertook to form a new special partnership, the copartnership agreement having been executed by the special and general partners on the 4th day of June, 1895. By that agreement a limited partnership under the laws of the state of New York was formed under the same firm name; the general partners being the general partners in the former limited partnership, with the exception of Simmonds, and the special partners being the appellants, who were the special partners in the former limited partnership. This copartnership was to commence on the 4th of June, 1895, and was to terminate on the 30th of June, 1896. Emil Seidenberg, one of the general partners, contributed to the common stock of the partnership all of his interest in the assets of the former special partnership, which was dissolved on June 3, 1895; the other general partners not contributing any cash or other property to the capital stock of the partnership, and the amount of the contribution of the capital of Emil Seidenberg to be determined by an inventory of the assets and liabilities of the former firm of E. Seidenberg, Stiefel & Co., to be taken on or about June 30, 1895. To this partnership the appellants, the special partners, were each to contribute the sum of $50,000 in cash. The debts and obligations of the former partnership were not assumed by the new partnership, nor was there actual transfer of the assets of the former limited partnership to the new partnership. Emil Seidenberg agreed to contribute to the new partnership, as his contribution of capital, his interest in the old copartnership, and the amount of that contribution was to be determined by an accounting to be had on the 30th of June; but the amount of that contribution could not be ascertained until an accounting had been taken as between the partners of the dissolved partnership, and the balance ascertained after providing for the liabilities. This new partnership, therefore, commenced business with an assumed contribution of $100,000 by the two special partners, and an agreement by one of the general partners to contribute to the capital of the copartnership his interest in the dissolved firm, to be subsequently ascertained by an accounting. The new partnership did not assume the debts and obligations of the old partnership. The parties then proceeded to take the necessary steps to form a limited copartnership under the provisions of the Revised Statutes. A certificate, prepared in accordance with the statute, was executed on June 4, 1895, and an affidavit required by section 7 of the statute was verified by Emil Seidenberg, one of the general partners. This affidavit states that the sum of $50,000 had been actually and in good faith paid in cash to the common stock of the said partnership by Bernhard Beinecke, and the like sum of $50,000 had been actually and in good faith paid in cash to the common stock of the said partnership by Joseph Hesdorfer, and was, with the certificate, filed and recorded on June 4, 1895; and it is this affidavit and certificate that the referee has found contain false state-

ments which made the appellants, the special partners, liable as general partners.

The plaintiff called as witnesses all the general and special partners, and the defendants offered no testimony. This new firm continued in business until the 15th day of January, 1896, when the general partners united in a general assignment for the benefit of creditors, reciting that the said limited partnership was embarrassed and unable to meet its obligations as they fell due; and it is not disputed that at that time the copartnership was insolvent. The formation of this new special partnership appears to have been left to Mr. Adolph Kursheedt, who was the attorney for the special partners, and Mr. B. F. Einstein, who was the attorney for the general partners. So far as appears, the first discussion about the formation of this special partnership was some three or four weeks before it was formed. At that time, Mr. Beinecke, one of the special partners, was president of the Eastman's Company, a corporation doing business in New York; and Mr. Hesdorfer, the other special partner, was his partner in business, but was not connected with the Eastman's Company. Mr. Beinecke signed the dissolution of the first limited partnership on May 2, 1895, and in the latter part of May went to Europe, and subsequently had no personal connection with the organization of the second partnership; Mr. Hesdorfer, his partner, acting for him under a power of attorney. Mr. Hesdorfer testified that he first saw the copartnership papers for the second special partnership upon his arrival at Mr. Einstein's office on June 4, 1895; that Mr. Kursheedt told Mr. Hesdorfer that the special partners would have to contribute $50,000 each for the second special partnership; that the special partners would have actually to pay in $50,000 in cash to the new partnership, and make no conditions, no arrangements or anything, with any of the Seidenbergs, or with Mr. Stiefel, for the return of money, but might expect from the first partnership, as soon as they would liquidate their business, the $100,000 that had been in the first partnership. It also appeared that from six to ten days before June 4, 1895, Mr. Hesdorfer had telephoned to the treasurer of the Eastman's Company that he would like to have $100,000 by the 3d or 4th of June; that at this time he was not a creditor, officer, or stockholder of the Eastman's Company; that on the 3d of June he received, by messenger or in some other way, a check of the Eastman's Company payable to the order of Beinecke & Co., for $100,000, which was certified on June 4, 1895, and deposited in the bank to the credit of Beinecke & Co.; that on that day, and at the time of the execution of the copartnership papers, two checks drawn by Beinecke & Co., one to the order of B. Beinecke for $50,000, and one to the order of Joseph Hesdorfer for $50,000, indorsed to "E. Seidenberg, Stiefel & Co.," certified by the American Exchange Bank, were delivered to the new special partnership at the time of its formation.

The general partners who testified as to this transaction exhibited quite a remarkable failure of memory in respect thereto. Emil Seidenberg testified that, when the special partnership was organized, it was his understanding that the liabilities of the first firm were to be

paid, and that these liabilities included the $100,000 contributed by
the special partners to the first firm; that there was an understanding
that that $100,000 contributed by the first firm was to be paid into
the second partnership; that he considered the amount due to the
special partners of the first firm as a debt which the second firm had
to pay back; that he forgot where he first acquired his knowledge
that the special partners were to get the $100,000 back, and could not
tell whether it was before the second copartnership papers were signed;
that he knew the partnership only called for $100,000, and not for
$200,000. Joseph Seidenberg testified that no one talked to him upon
the subject of the dissolution of the first special partnership or the
formation of the second; that he did not know when he was in-
formed of the formation of the second partnership; that he did not
remember whether he first learned of it before the papers were sign-
ed or not; that he did not know the time of the receipt of the $100,-
000 as special capital, could not say whether it was in the month of
June, 1895, and did not know what the firm did with that $100,000
when they got it. Mr. Adolph Stiefel, the other general partner, tes-
tified that he knew that the first firm was to be dissolved and a new
firm organized; that no one consulted him about the formation of
the second firm; that he only heard that he had to sign new papers;
that he did not give any instruction in relation to the payment to
the special partners of their capital; and that it was after he signed
the partnership articles that he first heard that the special partners
were to put in $100,000 more. It did appear that upon the 4th
of June, 1895, an account was opened in the name of E. Seiden-
berg, Stiefel & Co., in the Southern National Bank by the deposit
upon that day of the sum of $100,000, and that that deposit con-
sisted of these two checks of $50,000 each, and on the morning of
June 5th there was a credit balance in that account of $100,000,
which was the proceeds of the two checks that had been delivered
to the general partners upon the organization of the new part-
nership, and that on the morning of June 7, 1895, there was a bal-
ance of $98,052.22 in this account; that on June 6th there was drawn
by the firm of E. Seidenberg, Stiefel & Co. upon this account a check
or checks aggregating $100,000, which were received by Mr. Hes-
dorfer on the morning of June 6, 1895, before banking hours; that
he deposited the check or checks in his bank to the credit of Bein-
ecke & Co. and on the same day Beinecke & Co. drew its check to
the order of the Eastman's Company for $100,000, which check was
delivered to the Eastman's Company and deposited in its bank to its
credit.

The transaction was thus completed. The Eastman's Company on
the 3d day of June sent its check to Beinecke & Co., and Beinecke
& Co. delivered its checks to this special partnership upon its forma-
tion. Those checks had been deposited in the bank to the credit of
this new copartnership on June 4th. On June 6, 1895, before bank-
ing hours, the special partners had received from the special part-
nership the exact amount that they had contributed to the capital
of the copartnership from the money that they had actually con-
tributed, and that amount was then returned to the Eastman's Com-

pany, so that in less than three days this sum of money had been furnished by the Eastman's Company, had been used to organize this special partnership, and on June 6th was back again in the possession of Eastman's Company. There was no agreement between the general and special partners that this sum was to be returned, because their counsel had advised the partners that, if such an agreement was made, the special partners would be liable as general partners; and the only fact that seems to be remembered by the parties to this transaction was the payment of the money and this advice. This transaction is explained by Emil Seidenberg by his understanding that there was an indebtedness of the new special partnership to these two special partners of $100,000, which the new partnership was bound to pay; and to discharge that indebtedness this payment was made. His extremely defective recollection of the transaction does not enable him to state how he acquired that understanding; but it is quite apparent that there was no indebtedness to these special partners from either the first or the second partnership. Upon settlement of the affairs of the first copartnership, the special partners would have been entitled to a return from the assets of that firm of their contribution to the firm, if the firm was solvent and that amount remained after the payment of its liabilities; but so far as appears there never was an accounting of the old firm, and it does not appear that there was an excess of $100,000 over and above the liabilities of that firm. But, whatever the obligation of the old firm was, there was certainly no indebtedness of any kind from the new firm to the special partners. The money was paid, not by the first firm, but by the second; and the money that was returned to the special partners was the identical money that they had less than two days before paid as their contribution to the capital of the new firm.

The statute requires that the sums specified in the certificate to have been contributed by each of the special partners "should be actually and in good faith paid in cash." The amount of the special capital must actually be contributed by each of the special partners to the common stock, and that amount must be actually and in good faith paid in cash; and the general partner is required to state that fact by an affidavit, and, if that statement is false, all the persons interested in the partnership are liable for all arrangements thereof as general partners. In considering the good faith of the parties to such a transaction, their acts, both in relation to the payment and their subsequent transactions with the special partnership, are to be considered, and, if it appears that the contribution of special capital was not actually and in good faith paid in cash, then the special partners are liable as general partners. From this testimony it seems to me quite apparent that the referee was justified in determining that this contribution by the special partners was not actually and in good faith paid in cash. It never really became a part of the capital of the new partnership. It was kept in a special deposit by itself, and less than two days after its receipt it was actually repaid to the special partners. The question is one of fact, and to my mind this evidence, including the acts of the parties, the payment by the special

partners, and the return of the money to them, justified the conclusion that it was never intended by any of them that this amount of $100,000 should be contributed to the common stock of the special partnership, and actually and in good faith paid in. The money passed, it was retained by the general partners as a special deposit for less than two days, and then the identical money was returned to the special partners, and received and retained by them. No one looking at this completed transaction would say that there ever was, or ever was intended to be, a contribution of capital to this special partnership, and the amount thereof actually and in good faith paid in in cash. The transaction speaks for itself. The statute requires good faith on the part of the partners, and the fact that neither the general nor the special partners made a specific agreement for the return of this money is not controlling, when the absence of such a specific agreement is based upon advice of counsel that an agreement, if made, would involve the special partners in liability for the firm debts.

The proposition which is relied upon by the defendant, that, if the statement contained in the certificate or affidavit is true at the instant of the filing thereof, there is no liability, because, being true at the instant of the creation of the limited partnership, they fulfill the purpose for which the law was enacted (Ropes v. Colgate, 17 Abb. N. C. 136; White v. Eiseman, 134 N. Y. 101, 31 N. E. 276), is not disputed. The question is whether there was at that time a contribution in good faith; and it was that question that the referee had to decide, and that question which he decided in the negative, and his decision is based upon what, from an examination of this record, is, we think, satisfactory evidence. Notwithstanding the formal handing over of the money, there was no contribution, and there was never intended to be a contribution, of this $100,000 to the common stock of the new partnership. It is not necessary to determine whether a finding of the referee in favor of the defendant would have been reversed. The referee has found as a fact that this payment was not made in good faith, and the question here is whether that finding is sustained by the evidence.

In Pres't, etc., of Manhattan Co. v. Phillips, 109 N. Y. 383, 17 N. E. 129, it was held that upon the facts of that case this question of good faith was for the jury, and that a direction in favor of the plaintiff was error; and this case was followed by the case of Metropolitan Nat. Bank v. Palmer (Sup.) 9 N. Y. Supp. 239. We have in this case a special finding by the trial court that this contribution was not made in good faith; and the question was not whether that fact was proved so conclusively that the court on a trial before a jury would have been bound to direct a verdict, but whether that finding was supported by the evidence; and we think, upon a consideration of the whole case, that the finding was so supported.

There is no exception to rulings upon questions of evidence which requires attention, and upon the whole case we think the judgment should be affirmed, with costs. All concur.