## Schick-Johnson Company, Appellee, v. Central Republic Bank and Trust Company, Appellant.

### Gen. No. 36,465.

Opinion filed December 13, 1933.

FISHER, BOYDEN, BELL, BOYD & MARSHALL, for appellant; DAVID A. WATTS and WM. G. BLOOD, of counsel.

WHITE & HAWXHURST, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

The plaintiff's suit is a fourth class action in the municipal court of Chicago, and is based upon defendant's certification of a check. The case was tried without a jury, and at the close of the evidence the court overruled the defendant's motion for a finding, and entered a judgment upon a finding for the plaintiff in the sum of $297.87 and costs of suit. From this judgment the defendant perfected an appeal to this court.

Plaintiff's statement of claim is based substantially upon the certification of a check by the defendant, and failure to pay upon presentation the amount of the check to the plaintiff, and alleges a telephone promise by the defendant to certify the check upon presentation, and that relying upon that promise the plaintiff released collateral security to the drawer of the check.

The defendant's affidavit of merits alleges that the check was certified by mistake after the drawer of the check stopped payment; denies that a telephone promise was made to certify, and alleges that the plaintiff's position was not changed because of the alleged promise to release the collateral.

The evidence is, in substance, that the check was delivered to the plaintiff on the afternoon of June 24, 1932, and that the plaintiff at that time surrendered the possession of certain contracts which it held for security purposes; that at 8:30 the next morning the defendant received a stop payment order from the drawer of the check, which was taken to the paying teller's cage about 9:10 a. m.; that the check was presented for certification shortly before 10:00 a. m.; that there was a large number of stop orders that morning, and that the teller failed to notice the stop order in his cage and certified the check. The check itself shows that it was shortly afterwards deposited in the First National Bank of Chicago by the plaintiff, presented for payment in the clearings two days after the certification, and upon presentation payment was refused and the check stamped, "payment stopped."

The possession of a certified check creates a sense of security in the holder. He, the holder, knows that the bank has the amount of money of the drawer on deposit in the bank; that his account is charged with the amount so certified, and that the bank will pay the amount called for by the certified check.

By common usage business men uniformly have accepted and treated a certified check as so much cash. When the check was presented by the plaintiff to the paying teller of the defendant bank, the plaintiff was entitled to receive the amount of the check in cash, but instead of demanding payment in cash the plaintiff accepted the certification of the check. All this was done during the regular banking hours of the bank.

The evidence is silent as to any representation, nor is there any intimation that the plaintiff induced or took an unjust advantage of the defendant bank. The plaintiff did not deceive the bank. The drawer had money on deposit sufficient to pay the amount called for by the check. This the defendant bank acknowledged when it certified the check.

In an opinion on this same question, in the case of *Carnegie Trust Co. v. First Nat. Bank of City of New York*, 213 N. Y. 301, Mr. Justice Cardozo (now a Justice of the U. S. Supreme Court), while sitting as a Justice of the Court of Appeals of New York, said:

"If the bank that made the payment has a cause of action for money paid under mistake, it must invoke that remedy directly. It cannot accomplish the result indirectly by inducing the defendant to repudiate the acceptance.

"Any other conclusion would be destructive of the value and efficiency of certified checks. By common use such checks are treated for most purposes as the equivalent of cash (*White v. Eiseman*, 134 N. Y. 101, 107). It would be an unfortunate rule that would impair their ready acceptance in the transactions of commerce. If the holder of a check, after procuring it to be certified by a bank, may be required to litigate the question whether the maker of the check had a right of counterclaim or set-off, the transaction has not been safely closed until the cash has been collected. That has not heretofore been supposed to be true. In the words of Peckham, J., in *First Nat. Bank of Jersey City v. Leach* (52 N. Y. 350, 353): 'The bank virtually says that check is good; we have the money of the drawer here ready to pay it. We will pay it now, if you will receive it. The holder says no, I will not take the money; you may certify the check and retain the money for me until this check is presented.' If the bank may resist payment whenever the drawer has

omitted to take advantage of a right of set-off, the holder's safety is illusory.''

If the drawer after the issuance of a check can for any reason, or even without reason, stop payment, the holder's confidence in a certified check will be shattered.

The plaintiff in the instant case maintained that there were sufficient funds of the drawer in the bank to apply upon the check at the time the defendant's teller certified the check, and that the drawer was thereafter permitted to withdraw the amount from its account. That is not the issue in this case. The defendant's liability is to be determined upon the facts in evidence that led to the certification of the check and the bank's failure to pay.

The contention of the defendant is that the check having been certified by mistake, and since the right of third parties have not intervened, the certification may be revoked; and, in support of this position, the case of *National Plumbing & Heating Supply Co. v. First Nat. Bank of Chicago*, 260 Ill. App. 431, is cited. From the evidence in that case we are not satisfied that the holding is applicable to the instant case. The facts as they appear from the evidence offered by the defendant bank and hereinabove, in part, set forth, are that Harry H. Dobry, drawer of the check, had business dealings with the plaintiff, and the plaintiff held instalment contracts which Dobry had with certain purchasers of fixtures. These instalment contracts were delivered by Dobry to the plaintiff and held by it as collateral security, and in order to obtain possession of these contracts from the plaintiff, Dobry, on June 24, 1932, late in the afternoon, issued the check in question and obtained the instalment contracts from the plaintiff. On the morning following the date of the check, Dobry called the bank by telephone about 8:30, and told the person answering the telephone to stop

payment on the check issued by him, Dobry. This evidence clearly indicates that the drawer in order to obtain possession of the collateral, issued the check late in the afternoon after banking hours, and at the time never intended that payment of the check should follow. The act of the defendant in endeavoring to stop payment on the check before banking hours the following morning, after the check had been accepted in good faith by the plaintiff, sustains this conclusion.

The evidence was offered as a part of the defense of the defendant bank in order to support its reason for refusing payment of the certified check. Under these facts there is no theory of law upon which the drawer of the check was justified in stopping payment, and upon this same evidence offered in defense, the defendant was not justified in refusing payment of the certified check in evidence.

The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*

HALL, P. J., and WILSON, J., concur.