NEW YORK STOCK EXCHANGE, INC., et al., Plaintiffs,

v.

Fergus M. SLOAN, Jr., et al., Defendants.

No. 71 Civ. 2912.

United States District Court, S. D. New York.

March 25, 1975.

See also, 2 Cir., 489 F.2d 1.

Milbank, Tweed, Hadley & McCloy, New York City, for plaintiffs.

Eagle & Fein, New York City, for defendant Ruth Button.

## MEMORANDUM

LASKER, District Judge.

In June, 1970, Orvis Brothers & Co., a member firm of the New York Stock Exchange ("Exchange") commenced liquidation after a period of financial difficulties. The Exchange brings this suit to recover some $5,000,000. expended from its Special Trust Fund to compensate public customers of Orvis for the losses which resulted. Defendants include Orvis' general and limited partners and certain of its subordinated lenders. The amended complaint alleges that defendants conspired to enable Orvis to continue in business notwithstanding its violation of various Exchange rules, particularly the "net capital" rule.

Defendant Ruth Button, who was allegedly a limited partner during the relevant period, counterclaims under §§ 6 and 10(b) of the Exchange Act, 15 U.S.C. §§ 78f and 78j(b) for the loss of her investment in Orvis. She moves, pursuant to Rule 56, Federal Rules of Civil Procedure, for summary judgment (1) dismissing the amended complaint as against her; (2) granting her judgment on her counterclaims against the Exchange and (3) directing plaintiff trustees to reimburse her out of the Exchange Special Trust Fund for her losses.

The Exchange does not oppose dismissal of the complaint as against Button; accordingly, the motion is granted to that limited extent. However, for the reasons stated below, the motion is otherwise denied.

### I.

Button makes two principal arguments regarding her counterclaims: first, at the time Orvis entered liquidation in June, 1970 she was neither a limited partner nor subordinated lender of Orvis, as claimed by the Exchange, but a public customer entitled to share in the Special Trust Fund; and second, regardless of her particular status, the Exchange violated §§ 6 and 10(b) of the Exchange Act in failing both to enforce its rules as to Orvis and to disclose material facts about the firm's financial condition at the time it approved her application to become a limited partner in November, 1969.

The following facts are undisputed. Prior to January, 1968, Button maintained a customer's account at Orvis. On March 19, 1969 she entered into a written agreement with Orvis to subordinate her customer's account to the claims of Orvis' creditors in exchange for periodic interest payments for the use of her securities. On May 15, 1969 the Exchange approved the agreement which, by its terms, was to terminate November 14, 1969.

On November 11, 1969, immediately prior to the expiration of the subordination agreement, Button applied to the Exchange to become a limited partner of Orvis. The application was approved on November 20, 1969. Although the parties do not dispute the facts of record as to Button's subsequent relationship with Orvis, they disagree as to whether Button actually became a limited partner.

Button contends that the legal prerequisites to her becoming a limited partner were never met. She points to the undisputed facts that she never signed any articles of partnership of Orvis and that consequently no articles bearing her signature were ever filed by Orvis with the Exchange; nor did the Exchange ever approve any articles of partnership of Orvis bearing her signature. Moreover, Orvis has never filed articles bearing Button's name in any County Clerk's Office in the State of New York. She claims that these facts establish that she never became a limited partner of Orvis as a matter of law because (1) Orvis' standard form of partnership states that to be admitted to the partnership, the new partner must agree in writing to be bound by the provisions of the partnership agreement. (See Exhibit A, annexed to Exchange's Notice of Motion for Summary Judgment); (2) Rule 313 (10) of the New York Stock Exchange requires a signed copy of all partnership articles to be filed with the Ex-

change; (3) Rule 313(a) requires the submission to and acceptance by the Exchange of "all partnership articles . . prior to becoming effective"; (4) Rule 325 does not count as capital of a member firm "Accounts of partners which are not covered by agreements, in form approved by the Exchange"; and (5) § 91 of the New York Limited Partnership Law requires the filing of articles of partnership in the County Clerk's Office of the county in which the partnership's office is located.

■ In our view, Orvis' failure to comply with these formal requirements does not establish for purposes of the present suit that Button remained a customer of Orvis and is, therefore, entitled to compensation from the Special Trust Fund. Although the question is novel and not free from doubt, we find that Orvis' non-compliance with the formalities is a factor to be considered, but is not dispositive of the issue of Button's status.

■■ It is doubtful that any of the requirements on which Button relies are imposed for the benefit and protection of those in her position. The manifest purpose of the relevant Exchange rules is to enable the Exchange to monitor the source and quality of capital in member firms, not to notify limited partners of their status which, in the usual case, is surely well known to them. Similarly, state law requires the filing of articles of partnership to give notice to creditors and others dealing with the partnership that the liability of a limited partner is indeed limited. See White v. Eiseman, 134 N.Y. 101, 31 N.E. 276 (1892), Columbia Bank v. Beralzheimer, 33 App. Div. 235, 53 N.Y.S. 417 (1898).

## II.

The Exchange argues that in any event Button is estopped from denying that she was a limited partner of Orvis because she sought that status and knew that the Exchange considered her to be a limited partner. The record establishes that Button applied to the Exchange to become a limited partner on November 11, 1969, and that her application was approved by the Board of Governors on November 20, 1969. Notice of her admission was published in the New York Stock Exchange Bulletin dated November 21, 1969, in the American Stock Exchange Bulletin dated November 21, 1969, and in the minutes of the Orvis General Partners meeting of November 24, 1969. From time to time after November 20, 1969, Button received and accepted interest payments from Orvis at the rate then paid on the invested assets of limited partners. She also received memoranda and letters which indicated that Orvis regarded her as a limited partner. At her deposition, Button did not recall having questioned anyone at Orvis or the Exchange about her status. By letter dated April 28, 1970 Button advised Orvis:

" . . . I am withdrawing as a Ltd. Partner of Orvis Brothers & Co. effective the close of business July 31, 1970.

This notice is given to all Partners pursuant to Article 9A of our Partnership Agreement."

■ Button argues that the defense of estoppel is unavailable to the Exchange as a matter of law because Orvis knew better than she did that the formal requirements had not been met; and consequently it could not have relied on any act or representation she made as to her status. However, the operative relationship in the present suit is between the Exchange and Button, rather than between Button and Orvis. If the Exchange relied in good faith on Button's application to become a limited partner as evidence of her intention to become one, approved the application and then counted her assets toward Orvis' capital, while she earned commensurate interest payments, Button may well be estopped from denying she was a limited partner. In any event that question cannot be determined on the present record because there is no evidence as to the Exchange's knowledge of Button's "true" status, and whether it relied in good faith on the capital she contributed. These consider-

ations alone bar the grant of summary judgment.

However, in our view, the issue does not hinge entirely on whether the facts conform to the classic definition of estoppel, or indeed whether the Exchange has properly pleaded it as an affirmative defense, as Button argues. Nor does the issue necessarily turn on whether all the formalities were duly executed. At the least, Button's own belief as to her status prior to the Orvis liquidation and her performance of every step *she* was obligated to take in order to become a limited partner (such as applying to the Exchange to begin with) are highly relevant. If Button intended to assume the risk of becoming a limited partner in order to earn a higher return on her invested assets, the compliance or non-compliance by the Exchange or Orvis with certain formalities did nothing to widen her risk, and she may well be regarded as having intentionally relinquished her status as "customer."

Whatever the answer, that issue, like the others discussed, cannot be determined on the present motion because the parties dispute critical facts relating to Button's belief as to her status at Orvis and her knowledge of the fact that Orvis and the Exchange treated her as a limited partner.

### III.

Button also contends that, assuming arguendo she was a limited partner of Orvis, the Exchange violated § 6 and § 10(b) of the Exchange Act in failing to disclose material facts regarding Orvis' condition when it approved her application in November, 1969. Putting aside the questions whether the Exchange was under a legal duty to Button to disclose whatever it knew of Orvis' condition and whether Button has adequately pleaded a § 10(b) claim, the parties sharply dispute whether Orvis was actually in violation of Exchange rules in November 1969 and, if so, whether the Exchange knew of the violation.

Button points to documentary evidence that the Exchange had censured Orvis in June, 1969 for the inadequacy of its accounting systems, and claims that the Exchange's failure to disclose this fact violates § 10(b) as a matter of law. We disagree. The censure of Orvis in June, 1969 does not establish either that Orvis' accounting procedures were still deficient in November, 1969 or that the Exchange had knowledge of such deficiencies, if any. On the inadequate record before us, we are unable to determine whether the Exchange violated any legal duty it owed to Button in November, 1969.

Button's motion for summary judgment is granted to the extent of dismissing the amended complaint as against her; and denied as to her counterclaims against the Exchange.

It is so ordered.